## OLIVER v. COLUMBIA, NEWBERRY AND LAURENS R. R. CO.

1. EVIDENCE—BYSTANDER—EXCLAMATIONS—RES GESTAE.—In an action against a railroad company for negligence to passenger in separating cars it is competent to permit bystander to testify that he hollered when he saw the imminence of the danger and his reason therefor, the words used not being brought out, whether engineer heard him or not.

2. IBID.—RES GESTAE.—EXCLAMATIONS of pain and actions indicating pain by party injured, immediately after injury, are part of *res gestae*.

3. WITNESS—LEADING.—QUESTION embodying a fact already stated by the witness is not leading.

4. EVIDENCE—RAILROADS—PASSENGERS.—In such action the accommodations for passengers, depth of ditch below step, crowded condition of cars, and possibility of getting on another coach, are competent evidence on whether under the circumstances a reasonable time was given passengers to change cars.

1—65

5. IBID.—DAMAGES.—In action for damages by wife, amount paid physician by husband is competent to show wife's condition and medical attention shown her.

6. IBID.—PASSENGER—TICKET.—It is competent for passenger to say he bought a ticket from one point to another without producing it, but he cannot state its contents.

7. IBID.—DAMAGES.—Party may give his estimate of his own injury in dollars.

8. IBID.—HEARSAY.—STATEMENTS of a witness used at a former trial are hearsay on a subsequent trial in the mouth of the party in whose favor formerly introduced.

9. IBID.—DE BENE ESSE—NOTICE.—Where the notice to take testimony *de bene esse* states that the witness is a non-resident, but gives no reason for taking his evidence, and a witness had previously stated that he lived in another State, the witness so stating in his deposition and it being so stated in the return, there is sufficient *prima facie* evidence of non-residence.

10. EVIDENCE TAKEN DE BENE ESSE for one trial is competent for any subsequent trial.

11. IBID.—EXPERT.—PHYSICIAN who has examined a patient may state as an expert what he found "the matter with" the patient and what in his opinion caused the trouble.

12. IBID.—DISCRETION.—RELEVANCY of a question is largely left to trial Judge. Objection here raised to question as irrelevant overruled.

13. EXCEPTION—APPEAL.—Objection on trial stating no ground, will not be considered on exception.

14. RAILROADS—CONNECTING LINE—PASSENGER—NEGLIGENCE—JURY.—Whether a railroad company selling a ticket for itself and as agent of another, whereby it limited its own liability for injury to its own line, is responsible for negligence to a passenger accruing on the track of the connecting line over which the initial road was accustomed to run its cars for a short distance before turning over the passengers to the connecting line; initial road insisting that the train had been turned over to connecting line, is a question for jury, and if the injury occurred before the train was actually received by the connecting line, the initial road is liable therefor.

15. RAILROADS—PASSENGERS—JURY—NOTICE AND TIME TO CHANGE CARS.—Whether a railroad company gave a passenger sufficient notice that he must change cars; and whether it gave him sufficient facilities and time for so doing, is a question for the jury, to be judged of in each case from all the circumstances.

16. PREPONDERANCE OF EVIDENCE—BURDEN OF PROOF.—Judge did not instruct jury that if any negligence was chargeable to defendant by

the preponderance of the evidence in favor of plaintiff, the burden was upon the defendant to satisfy the jury that such negligence was the proximate cause of the injury.

17. BURDEN OF PROOF.—Jury properly instructed that the burden was on plaintiff to prove that her injury was due to the negligence of defendant, and if she did so, then the burden of showing contributory negligence was on the defendant.

18. CONTRIBUTORY NEGLIGENCE.—No error in defining contributory negligence or in stating it as an issue in the case.

19. FINE—PENALTY.—EXEMPLARY DAMAGES in a proper case may be awarded as a punishment to the wrong-doer for the wilful invasion of a private right and as a warning to others, but never as a fine or a penalty for a public wrong.

20. EXEMPLARY DAMAGES.—A party has no cause of action against a railroad company for punitive damages unless he has been injured by the negligence of the company.

21. EXEMPLARY DAMAGES cannot be based on gross negligence alone, but to sustain it, there must be wilfulness, recklessness, rashness, utter disregard of the rights of others.

22. RAILROADS—EXCURSION TRAINS—PASSENGERS—STATIONS.—Section 1687 of Revised Statutes requiring trains to stop at stations for sufficient length of time to receive and let off passengers applies to excursion trains.

23. CHARGE—JURY.—No error to instruct jury to enquire if any witness had personal interest in the result of the suit, and to endeavor to reconcile conflicts in the evidence.

Before BENET, J., Richland, April term, 1900. Affirmed.

Action by Alice E. Oliver and P. M. Oliver, her husband, against Columbia, Newberry and Laurens Railroad Company. From judgment for plaintiffs, defendant appeals on the following exceptions:

"1. Because the Court allowed the witness, W. M. Fitch, to state, over the objection of defendant's counsel, that he shouted to the engineer when he saw this accident about to occur, and to state the reason for his shouting or hollering; whereas, it is submitted, that the statements of the witness to the engineer is not competent evidence; more especially when there is no proof that the engineer heard his call.

"2. Because the Court erred in allowing the witness, W.

M. Fitch, over the objection of defendant's counsel, to state, after Mrs. Oliver had been placed on board the train, after the accident, what she did, what she said; whereas, it is contended that her expressions at that time were not competent evidence.

"3. Because the Court allowed counsel for the plaintiff, Mrs. Oliver, over the objection of defendant's counsel, to ask the witness, W. M. Fitch, this question: 'Can you state positively whether or not it was the same conductor or whether they changed conductors at Clinton?' whereas, it is submitted that that form of question was leading.

"4. Because the Court allowed the witness, Hill, to testify, over the objection of defendant's counsel, as to the accommodations for passengers at the place where Mrs. Oliver fell; whereas, it is contended that the defendant company, having transported the passengers to Clinton, which was even beyond the terminus of its own line, was not called upon to furnish them accommodations with reference to their further journey.

"5. Because the Court allowed the witness, Hill, over the objection of defendant's counsel, to state to what extent the depth of the ditch or drainage way at the side of the track would increase the length of the step that would be taken from the platform to the ground; whereas, it is contended that inasmuch as this injury did not occur in stepping off of the platform to the ground, but in passing from one coach to another, that matter was irrelevant and incompetent.

"6. Because the Court allowed the witness, Padgett, to state, over the objection of counsel, that when he went from the train on which Mrs. Oliver was to another train that was standing at the depot at Clinton, that he could get no further on that train than the platform; whereas, it is submitted that with the condition of that other train the defendant in this case had nothing to do and for its condition was not answerable.

"7. Because the Court allowed the witness, P. M. Oliver, to state what amounts he had paid physicians for attending

to his wife, over the objection of defendant's counsel; whereas, it is suggested that this being a suit on the part of the wife, expenses borne by the husband could not form an element of damages.

"8. Because the Court allowed the witness, P. M. Oliver, to state the condition of Dr. Hildebrand, especially as it related to his tongue, when it is especially submitted that Dr. Hildebrand's condition had nothing whatever to do with the issues presented in this case.

"9. Because the Court allowed the witness, Thomas E. Campbell, to state, over the objection of defendant's counsel, and on the inquiry of the Court itself, that he bought a ticket to Atlanta; whereas, the ticket being the highest evidence, should have been produced to show to what point it entitled the purchaser to a passage.

"10. Because the Court allowed Mrs. Alice E. Oliver, over the objection of defendant's counsel, to state that, 'Ten thousand dollars seems to be a pretty paltry sum; I do not consider enough money to recompense;' whereas, it is respectfully submitted that she should only have been allowed to state her condition, and that the jury were the ones to fix the amount of damages she had sustained.

"11. Because the Court refused to allow defendant's counsel to cross-examine and bring out the fact that Mrs. Alice E. Oliver, the statements of Judge Jones that she had herself introduced as testimony to support her case on the former trial of it.

"12. Because the Court allowed the deposition of Dr. Roy to be read to the jury, over the objection of defendant's counsel, when it is respectfully submitted that this could not be done unless it had also been proven that Dr. Roy was, at the time of the trial, beyond the jurisdiction of this Court or a resident of another State, and because these depositions were taken for the purpose of a former trial and were not valid for the purpose of this trial.

"13. Because the Court erred in admitting, over defendant's objection, the testimony of Dr. Roy taken under com-

mission, because said testimony being taken under a special notice, the notice should have stated the reason for which the testimony was taken. 2. It was only good for the trial for which the notice was given, and because no reason was given for the non-attendance of the witness himself.

"14. Because the Court erred in allowing Dr. Roy, over the objection of defendant's counsel, to answer the question, 'State what you found to be the matter with her;' whereas, it is suggested, he should only have been allowed to detail the symptoms.

"15. Because the Court erred in allowing Dr. Roy to answer, over the objection of the defendant, '19th direct: Doctor, suppose that a woman in the early stages of pregnancy should be standing on the platform of a railway car, and by the sudden movement of the car should be thrown from the platform to the ground; and suppose that, prior to the said fall, there were no physical indications of injuries of any character on this woman; and suppose that, shortly after this fall, an examination by a physician should disclose bruises on the hip and back of this woman, and the displaced condition of her uterus, what, in your opinion, as a medical expert, would you say was the cause of said injuries?' whereas, it is submitted that that was a question for the jury and not for the witness.

"16. Because the Court erred in allowing Dr. Roy to answer the question, over the objection of defendant's counsel, '23d direct: State what danger, if any, there would be of a miscarriage? (Defendant objects as not being pertinent to the facts of the case.)' Whereas, it is submitted that that question was not relevant to this case.

"17. Because the Court erred in allowing, over the objection of the defendant, Dr. Roy to answer the question, '31st direct: Doctor, what is the amount of your bill for attending Mrs. Oliver at the above mentioned time? (Defendant objects as being incompetent.)' Whereas, it is submitted that inasmuch as there was no proof that Mrs. Oliver paid this bill or was liable therefor, it is not competent.

"18. Because the Court erred in allowing the witness, Mrs. Dunlap, to state what other parties said, to wit: 'You can't get any seat, there is no light, you can't get out,' over the objection of defendant's counsel, thereby allowing hearsay evidence to go to the jury.

"19. Because, upon the motion for a nonsuit, his Honor, the presiding Judge, should have ruled that the action was based upon an allegation of a special contract made between the plaintiff, Mrs. Oliver, and the defendant by the purchase of a ticket. That the testimony on the part of the plaintiff showed that her passage from Columbia to Clinton was made in part on the defendant road only as far as Dover Junction, and thence over the line of a connecting road which was a part of the line which was to transport them on to Atlanta. That the liability of the defendant as a common carrier is only for that part of the journey on its own line, and that if it was liable for anything that happened at Clinton, its liability was due to some special contract, and the plaintiff had failed to introduce any testimony tending to prove any special contract; and, consequently, that there was no testimony to go to the jury to establish that at the time of the alleged accident the defendant was under liability to the plaintiff, and should have granted the nonsuit.

"20. Because, upon the motion for a nonsuit, his Honor should have held that if the testimony tended to prove that the accident to the plaintiff happened immediately after the arrival of the train at Clinton, it was both alleged in the complaint and proven by plaintiff's testimony that notice had been given by the conductor and other officers of the train of the purpose of the railroad company to shift the car in question from that train, and, therefore, passengers should have been on the lookout for the separation of the cars, and there was no breach of duty and no testimony tending to show any breach of duty on the part of the defendant in separating its train at the time stated, there being no testimony tending to show that there was any jerk, but simply a gentle moving off of the car.

"21. Because, upon the motion of a nonsuit, his Honor should have held that the testimony tended to prove that the accident happened some time after the arrival of the train at Clinton, and after notice had been given of its arrival, and if the plaintiff had retained her seat in that car for any purpose of her own, then the relation of carrier and passenger between the plaintiff and the defendant had ceased, and the plaintiff could not recover under the allegations of her complaint.

"22. Because, in his charge to the jury, his Honor used the following language: 'In one view of this case, it may be regarded as a three-cornered contest. It is primarily a suit brought by Mrs. Alice E. Oliver against the Columbia, Newberry and Laurens Railroad Company, but, incidentally, in defense against that action by that railroad, arises the question, whether, if Mrs. Oliver was actually injured in the manner she alleges, or to any extent, whether the railroad company sued is the right one to have been sued; whether the liability should be put on the C., N. & L. or upon the S. A. L.; consequently, a great deal of testimony that would not be proper to the ordinary suit for damages has properly come into this case. The answer of the defendant is, therefore, two-fold: 1. That Mrs. Oliver was not injured at all and, therefore, not entitled to damages. 2. Even if she was injured and entitled to damages, that the defendant, the C., N. & L. R. R., should not be held liable, but that the responsibility lies at the door of the S. A. L.;' when he had on the motion for a nonsuit used, in the presence of the jury, the following language: 'There was no agent, and, therefore, no terminus of any road.' * * * 'There is no doubt, if the accident had occurred on the other side of Clinton, the Seaboard would have been the proper defendant, just as much as if it had taken place in Atlanta; but in my mind, there is no doubt that, happening where it did and under the circumstances under which it happened, that the C., N. & L. is the proper defendant under this evidence, just as much as if it had happened on this side of Dover Junction;' thereby ex-

pressing his opinion on the facts in the presence of the jury and charging thereon.

"23. Because his Honor charged the jury as follows, to wit: 'And for a further defense, an affirmative defense, for the proof of which the defendant railroad company takes up the burden, it alleges this: "The defendant denies each and every allegation of the complaint with reference to the alleged negligence on the part of the servants and agents of this defendant corporation in the operating of the said train, and with reference to the alleged angry conversation or orders of the conductor, train hands and servants of this defendant corporation, upon the arrival of the said train at Clinton, and denies that the said train was negligently or carelessly divided or coupled together again, and alleges that, upon the arrival of the said train at Clinton, the plaintiff [mark, gentlemen, what follows is a form of allegation by which the defendant railroad company desires to throw the blame upon Mrs. Oliver], while knowing that she had reached the junction with the Georgia, Carolina and Northern Railroad, where it was necessary for her to leave the car in which she had traveled from the city of Columbia, carelessly and negligently failed and refused to leave the same for an unreasonable length of time, and that, if such injury occurred, it occurred while the agents and servants of this defendant company were properly shifting the cars of said train in accordance with the purpose and object of this defendant corporation," and alleges that the said injury, if any occurred, was due solely to the negligence of the plaintiffs aforesaid; in other words, the railroad company sets up the plea of contributory negligence, which, if successfully established, would relieve the defendant on that ground alone of any liability, because, where it is shown to the satisfaction of the jury, by the preponderance of the evidence, that the plaintiff injured was himself or herself careless or negligent, and that the plaintiff's carelessness or negligence was the immediate or proximate cause of the injury, without which the injury would not have been sustained, then, in such case,

the defendant would be entitled to a verdict and such a plaintiiff could not properly recover damages;' thereby indicating that the burden was upon the defendant of proving what the plaintiff had alleged in her own complaint, that she remained in the car after orders had been given for her to leave the same.

"24. Because his Honor charged that, 'Such damages are allowed in law and they operate almost like fines imposed in the criminal Court.   They are allowed, not so much to compensate the plaintiff or to enrich the plaintiff, but for public good to punish the defendant, therefore, they are called punitive damages.   Hence, also, they are spoken of as exemplary damages, that they may act as a warning, not only to the defendant, but to others occupied in the same business, by thus making an example of the defendant for the benefit of others;' thereby indicating that it was competent for the jury, in a civil action between individuals, to visit punishment upon the defendant for the public good.

"25. Because his Honor charged the jury that, 'if you come to the conclusion that the plaintiff has proved to your satisfaction that the defendant was guilty of gross, wanton or wilful negligence, such as shows a thorough disregard of the rights of the plaintiff in this case, you will be allowed to find not only actual damages, but in addition thereto an amount sufficient, in your opinion, to punish the defendant;' thereby indicating that it was competent for the jury, in a civil action between individuals, to visit punishment upon the defendant for the public good.

"26. Because his Honor charged, 'Such negligence, gross, wanton, wilful, in the case of injury, will give the person injured a cause of action, not only for actual damages, but for punitive damages.   Indeed, might give him his right of action for punitive damages without claim for actual damages.   This last form of negligence, as well as the first, is alleged in the complaint, therefore, gentlemen, if, in this case, it is established to your satisfaction by the preponderance of the evidence, then your verdict would be a sum of

money representing, not only actual injury sustained, or compensation for this injury, but also an additional amount, as I said before, to punish the defendant;' thereby indicating, 1st. That an action for such damages might be maintained by a plaintiff who had established no claim for actual damages and had received no actual injury; and, 2d. That if such negligence was established to the satisfaction of the jury, by the preponderance of the evidence, it would be their duty to give a sum of money representing, not only damages for actual injury sustained, but also an additional amount to punish the defendant.

"27. Because his Honor charged that, 'You are to require at the hands of the railroad in this case evidence to satisfy you that the railway was not the proximate cause in its negligence, that the railway was not to blame, but that Mrs. Oliver or Mrs. Oliver and her husband were to blame;' thereby indicating that it was incumbent upon the plaintiff only to prove negligence on the part of the defendant, and not to prove that such negligence was the proximate cause of her injury, but that it was the duty of the defendant to prove that its negligence was not the proximate cause of the injury.

"28. Because his Honor charged the jury, 'It is conceivable that both sides may have been careless, but the burden of proof is upon the plaintiff to satisfy the jury that the carelessness of the defendant was the proximate and immediate cause of the injury, and it's just as incumbent upon the defendant to satisfy the jury that it was the carelessness and negligence of the plaintiff that was the proximate and immediate cause of the injury,' thereby indicating that where both sides were negligent, it was as much incumbent upon the defendant to prove that the plaintiff's negligence caused the injury, as it was upon the plaintiff to prove that the defendant's negligence caused the injury.

"29. Because his Honor charged the jury, 'Such are some of the duties which the railroads owe to passengers, and the jury, in each particular case, is the judge to determine

whether the railway company, defendant, has given suffi-
cient notice—ample time—and whether the landing place
afforded was safe and convenient;' thereby indicating that it
was for the jury to determine whether sufficient notice had
not been given of the arrival of the train, and whether ample
time had not been allowed for her removal from the car, and
whether the landing place afforded was sufficient or conve-
nient, when the complaint contained no allegation charging
that the notice was insufficient, or that the time was not
ample, or that the landing place was not safe or convenient.

"30. Because, upon the request of the defendant, his
Honor refused to charge the jury, 'That the provisions of
sec. 1687 of the Revised Statutes of 1893 do not apply to
excursion or other trains run upon an irregular schedule,
and no duty is imposed by law upon a railroad company to
stop such a train at any station not advertised as a stopping
place for said train,' but modified the same by charging,
'That is good law to a certain extent.  By that I mean that
the whole of this section does not apply to excursion trains,
but a part of it most certainly does.  "Every railroad com-
pany in this State shall cause all its trains of cars for passen-
gers to entirely stop upon each arrival at a station advertised
by said company as a station for receiving passengers upon
such trains."  That does not apply to special excursion
trains; as we understand it, a special excursion train means a
train upon which passengers are received to go from one
point to another point.  As to those passengers, therefore,
on such train, there is no requirement to stop at any inter-
mediate place as is required of the railroads as to regular
trains.  But the next part applies to special excursion trains,
where it says: 'for a time sufficient to receive and let off pas-
sengers.'

"31. Because, in charging upon defendant's second re-
quest to charge, his Honor charged as follows, to wit: 'This
ticket shows a contract on the part of the C., N. & L. on its
first coupon, to transport the passenger who buys that ticket
safely from Columbia to Clinton.  The next coupon implies

a contract entered into by the C., N. & L. for the benefit of the G., C. & N. to carry the passenger who buys that ticket from Clinton to Atlanta; consequently, there is added to that second coupon the important addition, "On account of the G., C. & N." The third coupon implies a contract to bring the passenger who purchased this ticket from Atlanta to Clinton, and that contract was made by the C., N. & L. for the benefit of the G., C. & N. The last coupon, the fourth, implies a contract between the C., N. & L. and the passenger who bought this ticket to convey that passenger safely from Clinton back to Columbia, of which part of the contract the G., C. & N. has nothing to do, according to this contract. So far as this ticket shows, the G., C. & N., as a part of the S. A. L., has nothing whatsoever to do with that part of the contract by which the C., N. & L. undertook to convey the passengers from Columbia to Clinton, or back from Clinton to Columbia, but the S. A. L., or part of it, has something to do with the other section, the distance from Clinton to Atlanta and from Atlanta back to Clinton, because the ticket shows that the contract for that part of the journey was made on account of the G., C. & N., and of that part the S. A. L. has a great deal to do, and any accident occurring on that part of the road might well be made a cause of action against the S. A. L., and not the C., N. & L. ·So much, then, for the second request to charge;' thereby instructing the jury that the ticket and first coupon showed a contract of the defendant company to transport the plaintiff all the way to Clinton, and that under that contract the defendant company alone was liable for injuries suffered by the plaintiff even beyond the terminus of its own line at Dover Junction.

"32. Because his Honor, upon request of defendant to charge as follows, to wit: 'That the ticket introduced in evidence in this case does not constitute a joint contract between the C., N. & L. R. R. Co. and the G., C. & N. R. R. Co., or the Seaboard Air Line System of Railroads, for the carriage of plaintiffs to Atlanta;' said, 'I make the same re-

marks to that as before;' thereby indicating the same instructions which had been given in connection with defendant's second request to charge as quoted above.

"33. Because, upon request that his Honor should charge, 'That where a passenger is upon a special excursion train which has reached a station where he is informed that the car in which he is riding is to be detached from such train, he is bound to look out for the separation of the cars,' his Honor charged as follows, to wit: 'Why, certainly; just as, to the same extent, the railway company is bound to give him sufficient warning of such intended separation of the cars;' when the allegations of the complaint showed that the plaintiff had received warning of the intended separation of the cars, and it was not alleged in the complaint that she had not received sufficient warning.

"34. Because, upon defendant's request that his Honor should charge, 'That where two railroad companies unite to run an excursion train over both of their lines, upon terms which make each of them responsible only for accidents occurring on its own line, and tickets are sold by one of them as the agent for both, expressing such limitation of liability it matters not where, for the convenience of the parties, the point is established for the change of crews running the train, as to the passenger holding one of such tickets, the liability is fixed by the point of actual junction of the lines,' he charged as follows, to wit: 'Before charging you that, I have to explain to you that that would be the law unless part of the line or track of one railway is used in common by both railway companies; in which case, the liability is fixed, not by the point of actual junction of the lines, but by the time when the control of the train is surrendered by one company and accepted by the other company; that fixes the liability.'

"35. Because, upon request that his Honor should charge, 'That where a railroad company, chartered under the laws of this State, has, under the franchises conferred upon it, built its line and established a depot, and allows another railroad

company to run its trains over a part of such line and into such depot, the company owning such line is responsible to the public and passengers for all accidents happening on such trains by negligence,' he charged as follows, to wit: 'I cannot charge you that unless the evidence shows that the railway company owning such line had taken control of the train. One railroad company is not to be held responsible for the negligence of another railroad company. Each must bear its own burden. If, therefore, the company which is allowed to use a line is still in control of a train and injures a passenger by negligence, the railroad company owning the line cannot be held liable for that negligence, but the railroad company controlling the train would be held liable for the negligence.'

"36. Because, upon request that his Honor should charge, 'That where two railroad companies unite to run an excursion train over both of their lines, upon terms which make each of them responsible only for accidents occurring on its own line, and tickets are sold by one of them as the agent of both, expressing such limitation of liability, it matters not whether the train is carried through to its destination by the conductor and train crew employed by the initial company or not. The company upon whose track the train is at the time of the accident and under whose orders the conductor is running the train is liable for the accident, and the conductor is to the passengers on such train as the conductor of the company owning the line and issuing the orders for the operating of the train,' he charged as follows, to wit: 'As to that, gentlemen, I charge you that with this explanation, that the test is not what railroad company owns the line where the accident may have occurred, but what railroad company controls the train, because the railroad line may lease the line or it may be allowed, as a matter of favor, to run its train on the line of another railway, but the railway company controlling the train on the line of another railroad is responsible for the injuries caused by its negligence;' and upon its being explained by one of the attorneys for the de-

fendant that 'That request was intended to develop the idea that the conductor who was controlling the train, if he be controlling it under the orders of the connecting line, that the fact of his employment by the initial line does not make it a train, at that time, of the initial line,' his Honor charged as follows: 'Certainly not. Another line may employ the services of a conductor just as well as it may hire engines or engineers. The Seaboard may hire and pay for the services of a conductor of the C., N. & L. for that trip. He is no longer a conductor of the C., N. & L., but of the Seaboard. In this case, you are to say from the testimony whether the conductor in charge was in the employment, for that time, of the C., N.. & L. or the S. A. L., at the time the accident occurred;' thereby indicating that unless the services of such conductor had been actually employed by the Seaboard Air Line so as to make him no longer the conductor of the defendant company, the Seaboard Air Line would not be responsible for his actions; whereas, it is submitted that even if still in the employment of the defendant company and paid by it, if he was acting under the orders of the Seaboard Air Line, the defendant company would not be responsible for his actions.

"37. Because his Honor charged the jury as follows, to wit: 'You will ask yourselves whether any witnesses * * * had any personal interest in the event of the trial * * * If there is a conflict of testimony, you will endeavor to reconcile this conflict,' hereby indicating that, as a matter of law, it was the duty of the jury to inquire whether any witness had a personal interest in the event of the action and that it was their duty to reconcile any conflicts in the testimony."

*Messrs. Wm. H. Lyles* and *George Johnstone,* for appellant, cite: *Error to interpolate issues not raised by the pleadings:* 45 S. C., 282; 57 S. C., 433. *As to the liability of a carrier for rudeness of conductor:* 1 Fetter on Carriers, sec. 336; 1 C. C. A., 544; 2 Fetter on Carriers, sec. 553; 106 N. C., 168. *Deposition de bene esse not stating reason for*

*taking, is not competent:* Rev. Stat., 2345, 2347.  *Error to allow physician to give his opinion as to what was cause of plaintiff's injuries:* 32 S. C., 400; 59 S. C., 318.  *Contract with plaintiff was to carry her over defendant's line:* 19 S. C., 253.  *As to parting the cars:* 30 F. R., 347; 94 Mo., 255; 40 Miss., 386; Red. on Rys., 296; 6 Hill., 157; 9 Ind. Ap. C. R., 462; 147 Mass., 136; 89 Ga., 455; 100 Ala., 506; 80 Mo., 224.  *Answer did not set up plea of contributory negligence, and it was error to submit it to jury:* 59 S. C., 535; 1 Ency. P. & P., 824, N. 2; 51 S. C., 79.  *If plea was one of contributory negligence, instruction was error:* 59 S. C., 211.  *Exemplary damages cannot be awarded if no claim for actual damages is established:* 60 S. C., 72.  *Nor for gross negligence:* 60 S. C., 72.  *Defendant is not required to answer acts of negligence not alleged:* 45 S. C., 282.  *Liability of initial road ends at actual junction of lines:* 9 Cush., 24; 89 Ga., 494; 29 Vt., 421; 8 Tenn., 341.  *Owner of line of railroad is responsible for acts of negligence of another running trains over it:* 28 S. C., 401; 25 S. C., 222; 18 Am. & Eng. R. R. Cas., N. S., 37.

*Messrs. B. L. Abney* and *Andrew Crawford,* contra, cite: *Objection without grounds will not be considered:* 60 S. C., 70.  *Proper to describe appearance of injured parts and tell of her moaning:* 60 N. E. R., 814; 22 Am. & Eng. R. R. Cas., 694; 15 *Id.,* 113.  *Depositions taken for one trial may be used at any other:* 49 S. C., 169.  *It was imprudent to uncouple cars with passengers on platform:* 38 S. C., 485; 37 N. Y., 287.  *Defendant's liability continued to Clinton:* Bush v. Ry., 63 S. C.  *Jury must say if reasonable time had been given plaintiff to vacate the car:* 111 Ill., 219; 60 S. C., 48.  *As to the plea of contributory negligence and charge thereon:* 61 S. C., 458; 62 S. C., 380; 63 S. C., 290; 28 S. C., 29; 52 S. C., 224; 51 S. C., 296, 469; 51 S. C., 332, 467; 58 S. C., 227; 59 S. C., 440.  *As to actual and punitive damages:* 34 S. C., 312; 62 S. C., 252, 334; 16 Ency., 392, 395; 54 S. C., 505; 60 S. C., 48; 51 S. C., 228; 60 S. C. 72.

*As to opinion evidence:* 59 S. C., 211. *Charge as complained of in 37 ex. not on facts:* 50 S. C., 109.

December 8, 1902. The opinion of the Court was delivered by

MR. R. W. SHAND, *acting Associate Justice.* This was an action by Alice E. Oliver and her husband, commenced in November, 1896, to recover damages for injuries alleged to have been sustained by Mrs. Oliver by reason of defendant's negligence, at Clinton, in Laurens County, on 27th November, 1895, between the hours of 2 and 3 A. M. Judgment was demanded for $10,000. The alleged cause of action was injury received by plaintiff in falling from a car on an excursion train by reason of the uncoupling of such car and the movement of the other portion of the train just as she was about to move from one coach to another, under orders of the conductor, at a station where the train was to be turned over to a connecting line of road.

A demurrer was made to the complaint. It was overruled by Judge Ernest Gary, in October, 1898, and upon appeal this order was affirmed. See 55 S. C., 541, 33 S. E. R., 584. In the opinion of the Supreme Court as then delivered by Mr. Justice Pope, the complaint is stated in full. The ground of demurrer being that the complaint did not state a cause of action, the Court made a statement of the main elements thereof, but did not in such statement repeat all the particulars set forth in the complaint, nor intend that such synopsis should limit the issues to the facts there mentioned, to the exclusion of the other facts alleged in the complaint.

The answer of the defendant was as follows:

"For a first defense: The defendant, by George Johnstone and William H. Lyles, its attorneys, by this its amended answer, answering the complaint in the above entitled action.

"1. Admits that it is now a corporation created by and existing under the laws of the State of South Carolina, with its principal place of business and office in the city of Columbia, county and State aforesaid; and that as such corpo-

ration it now is the owner and operates the railroad known as the Columbia, Newberry and Laurens Railroad, between the city of Columbia, in the county of Richland, in said State, and the town of Clinton, in Laurens County, in said State, and that it is a common carrier of passengers thereon for hire, and that at the time stated in said complaint, to wit: on the 26th day of November, 1895, and for some time before and after said date, it was a corporation and owned a railroad extending from the city of Columbia, in said State, to Dover Junction, a station several miles east of the town of Clinton, over the railroad track of the Georgia, Carolina and Northern Railroad. This defendant denies each and every allegation contained in the second paragraph of the said complaint not herein specifically admitted.

"2. It denies knowledge or information sufficient to form a belief as to the allegations contained in the first paragraph of the complaint.

"3. It denies each and every allegation contained in said complaint.

"4. This defendant alleges that on the 26th day of November, 1895, and for some time prior and subsequent thereto, all passenger trains operated over the line of defendant's railroad from the city of Columbia to Dover Junction, referred to in the first paragraph of this answer, were hired from the Georgia, Carolina and Northern Railroad Company, of the Seaboard Air Line System of Railroads, under an agreement whereby the Seaboard System of Railroads would furnish the said trains and engineers, conductors and other members of the crew, at their own expense, and charge for the use thereof so much per mile, and that the train upon which it is alleged that the plaintiff was traveling at the time of the alleged injury, was a special excursion train run from the city of Columbia, South Carolina, to the city of Atlanta, in the State of Georgia, by the said Seaboard Air Line System of Railroads, upon a round trip excursion ticket at a specially low rate of fare; that the said train, and all other trains run over the line of defendant's road at said time, as

soon as they reached and passed Dover Junction, the station above referred to, passed immediately under the control of the officers of the Seaboard Air Line System of Railroads, and that all movements of said train and other trains after so passing said Dover Junction were under the direction of the said officers of the Seaboard Air Line System of Railroads.

"For a second defense: This defendant denies each and every allegation of the complaint with reference to the alleged negligence on the part of the servants and agents of this defendant corporation in the operating of the said train, and with reference to the alleged angry conversation or orders of the conductor, train hands and servants of this defendant corporation upon the arrival of the said train at Clinton, and denies that the said train was negligently or carelessly divided or coupled together again, and alleges that, upon the arrival of said train at Clinton, the plaintiff, while knowing that she had reached the junction with the Georgia, Carolina and Northern Railroad, where it was necessary for her to leave the car in which she had traveled from the city of Columbia, carelessly and negligently failed and refused to leave the same for an unreasonable length of time; and that, if such injury occurred, it occurred while the agents and servants of this defendant company were properly shifting the cars of said train, in accordance with the purpose and object of this defendant corporation, and alleges that the said injury, if any occurred, was due solely to the negligence of the plaintiffs aforesaid."

Upon the issues raised by the complaint and answer, the cause came on for trial before his Honor, Judge Benet, and a jury at the April term, 1900. At the close of plaintiff's testimony, a motion for a nonsuit was made and refused. In his charge to the jury, his Honor, the Circuit Judge, adverted to the two former trials of the cause, resulting in mistrials, and urged upon them the duty of rendering a verdict, if they could reach a conclusion without doing violence to their conscientious convictions. He then read to the jury the pleadings, explaining them, made his general charge and charged

upon the requests submitted to him.    So much of this charge as is necessary to a full understanding of the case will be found quoted in the exceptions and in this opinion.    A verdict was rendered in favor of plaintiff for $7,000.    A motion for a new trial having been refused, defendant appealed on thirty-seven exceptions, which should be reported.

As to the first exception.    The brief shows this witness (the first sworn) did not say that he hollered to the engineer when "he saw the accident about to occur," but when "the train started back——."    The Judge did not permit the witness to say what he hollered—what words he used—but did allow him to testify to the fact of the hollering and his reason for so doing, which, the witness said, was because he felt the party would be killed, and that it was "a spontaneous effort of mine to stop——" not completing his sentence.    All this was relevant to the fact of the train backing, "without any signal and without any regard whatsoever for the lives of the said plaintiff and her two children," as charged in the complaint.    It clearly showed the impression made at the time upon the mind of the witness, by what he then saw.    It was testimony of an unpremeditated and contemporaneous substantive act of the witness that tended to throw light upon the actual condition as seen by him.    Whether the engineer heard it or not, was immaterial as to the action of the defendant down to that instant of time.    This exception is overruled.

The second exception alleges error in receiving testimony as to what Mrs. Oliver did and said when put back upon the train after the accident.    Exclamations of pain and actions indicating pain are part of the *res gestae,* and may be proved by any bystander—2 Jones Evid., secs. 347, 352; I. Green. Evid., sec. 102; 37 L. R. A., 199, notes.    In *Enicks* v. *Stansell,* Judge Withers (as quoted on page 125 of 10 Rich. L., in *Welch* v. *Brooks*), speaking of the declarations of a negro slave, proved by witnesses, as to the nature, location or symptoms of a malady as exhibited by complaints in words or by actions, says: "Such evidence has

been received in our Courts upon the ground that it was the drapery surrounding the truth—that it was part of the *res gestae*—that it was of necessity receivable."

The third exception complains of this question: "Can you state positively whether or not it was the same conductor, or whether they changed conductors at Clinton?" The witness had previously said without objection, that "as far as I recollect, it was the same conductor." Then followed the question to which the objection was made that it was leading. In the connection in which it was asked we do not think the question was leading.

The fourth, fifth and sixth exceptions may be considered together. The defendant company had bound itself by contract (as will be discussed later on) to transport the plaintiff to Clinton and there deliver her safely, so that she might pursue her journey on the G., C. & N. Road, of the Seaboard Air Line System, to Atlanta. That contract would be fulfilled if the coach in which she had her seat was delivered to the connecting road, or, in case of a change of cars contemplated at Clinton, if defendant was afforded reasonable time and a safe place for change from train to train. There was testimony that the conductor had, both before and after reaching Clinton, directed all of the passengers to leave that coach in which Mrs. Oliver was sitting, and it was an issue raised by the complaint and answer whether it was the duty of the plaintiff, under the circumstances, to promptly act upon the prior orders to vacate. The Circuit Judge ruled that it was competent and responsive to these issues to show the accommodations for alighting, the condition as to platform, ground, lights and possibility of getting on another coach or the connecting train of the other road on which she was to proceed to Atlanta. In this we find no error. It is true, that no injury resulted to plaintiff directly from any of these conditions, but their existence was relevant to the question before the jury as to how much time for vacating that coach was reasonable, under the circumstances, and whether the parting of the train, an alleged

cause of the injury, was negligent because carelessly made too soon, all of which were for the jury to decide.

The seventh exception complains that the trial Judge improperly allowed Mr. Oliver, the husband, to testify as to the amounts paid by him for medical attention to his wife, inasmuch as such payment might be a loss to him, but not to his wife, for whose injury damages were demanded in this action. The Judge allowed this testimony as "tending to show the woman's condition and the medical attention shown her—not on the ground that the money paid should be an element in making up the amount of damages;" and he further ruled that, "as a matter of damages, it must not be taken by the jury." For the purposes indicated, the testimony was admissible, for it threw light upon the extent of her injuries, just as testimony as to the length of time she was confined to her bed would be.

As to the eighth exception. Dr. Hildebrand, a witness for plaintiff, had been examined *de bene esse,* and his testimony was subsequently introduced and read. P. M. Oliver, when on the stand, was asked as to Dr. Hildebrand's condition "as to his tongue." Defendant objected, stating no ground of objection. The Judge allowed the question, stating that he could not yet see its relevancy. The question was answered. A further question having been asked and answered, upon objection being again made by defendant, the Judge ruled out all further testimony as to Dr. Hildebrand's condition—so this exception is not well taken.

The ninth exception. The witness said, without objection, that he bought a ticket to Atlanta. When next asked, "Your ticket went through?" defendant objected, claiming that witness could say nothing about the ticket unless he produced it. The Judge then inquired of the witness: "You bought a ticket to Atlanta?" and the witness answered, "Atlanta." His Honor then ruled that the witness could not say "what was on the ticket." The witness then said that he went that night on the excursion

to Atlanta on the ticket he purchased in Columbia.    All this was competent.

Mrs. Oliver, in answer to the question to what extent in money, in her opinion, she had been damaged, was permitted to testify: "I could not put any money value on my health—$10,000 seems a very paltry sum.    I do not consider it enough money to compensate."    This is made the ground of the tenth exception.    We think the question was competent.    See *Jones* v. *Fuller*, 19 S. C., 70; *Gillman* v. *Railroad Company*, 53 S. C., 210, 31 S. E. R., 224.

Mrs. Oliver, on her cross-examination by defendant, was asked as to the movements of Judge Jones (a fellow-passenger) at the time of the accident; she replied that she did not know, except as she saw him there.    She was then asked if she had not introduced a statement from him as to his movements at Clinton on that occasion, as part of her testimony on a former trial of this case.    Upon objection made by plaintiff, the Judge ruled it out as hearsay—and this ruling is the basis of the eleventh exception. The ruling of the Judge is approved and the exception is overruled.

The testimony of Dr. Roy, a witness for plaintiff, was taken *de bene esse* in Atlanta, Ga., and read at a former trial of this cause, which resulted in a mistrial.    At this trial the same testimony was again offered by plaintiff, when defendant objected, on the ground that it had been taken for a former trial and could not be used at this; and further, because it was proven that Dr. Roy was beyond the jurisdiction of this Court.    The twelfth exception claims that this deposition was not admissible for these reasons. As to the last objection urged in this ground of appeal; Mrs. Oliver had previously testified that Dr. Roy was a resident of Atlanta; he also testified in his deposition, and it was so stated in the return.    It seems to this Court that this was sufficient *prima facie* evidence of his non-residence.    *Stoddard* v. *Hill*, 38 S. C., 385, 17 S. E. R., 131.

We also think that the other ground of objection was not

well taken. It has been held in this State that testimony taken by commission may be read at a second trial of the cause. *Pulaski & Co.* v. *Ward & Co.,* 2 Rich., 120. This rule of practice should not be overruled, and for the same reasons a deposition once taken may be read at any trial of that case. We agree with the Circuit Judge in so far as he says that "a deposition good for a first trial of a case may be introduced by counsel as they may see fit, just as they may put up some witness again as they see fit."

The thirteenth exception further complains of the admission of Dr. Roy's testimony, because "the notice should have stated the reason for which the testimony was taken," and because no reason was given for his non-attendance. His residence in Atlanta was a sufficient reason for his non-attendance. The notice under which the testimony was taken is not before this Court, but we gather from the colloquy between Court and counsel that the notice stated that the witness lived outside of the State of trial, but did not specify that fact as the reason why the testimony was to be taken *de bene esse.* We agree with the Circuit Judge that the fact stated was a sufficient reason.

We cannot sustain the fourteenth exception. The medical expert makes his diagnosis of an ailment from the symptoms discovered by his skill and from other symptoms gathered from the statements as to her present condition made to him by the patient while under examination. See authorities cited under the rulings *supra* on second exception. From these symptoms thus discovered he determined what "is the matter" with his patient, and the jury may have this conclusion expressed to them as the opinion of an expert witness. There was no error, therefore, in permitting this question to be asked and answered for the consideration of the triers of fact.

To Dr. Roy was submitted a hypothetical question. Without the mention of Mrs. Oliver's name, it supposed the case of a woman in the condition in which Mrs. Oliver had been before the accident and after it, according to the testi-

mony of some of the witnesses, and inquired, "What, in your opinion as a medical expert, would you say was the cause of the injuries?" To this interrogatory defendant objected upon the ground that it was a question for the jury, citing *State* v. *Senn*, 32 S. C., 400. The objection was overruled and the witness answered, "I should naturally infer that the injuries were produced by the fall." This ruling is complained of in the fifteenth exception. We think the question objected to, submitted to medical expert, was competent, under the rules laid down in *Easler* v. *Railroad Company*, 59 S. C., 318.

The sixteenth exception alleges error in permitting Dr. Roy to answer the question: "State what danger, if any, there would be of a miscarriage?" upon the ground that no miscarriage had been proven, and, therefore, the question was irrelevant. The question of relevancy is largely left to the discretion of the trial Judge. *Lynn* v. *Thompson*, 17 S. C., 134; *State* v. *Green*, 48 S. C., 136, 26 S. E. R., 234; *Pearson* v. *Spartanburg*, 51 S. C., 480, 29 S. E. R., 193; *Martin* v. *Jennings*, 52 S. C., 371, 129 S. E. R., 807; *Watts* v. *Railroad Company*, 60 S. C., 67. This physician had previously stated that soon after the accident he had found plaintiff to be two or three months advanced in pregnancy—Mrs. Oliver had testified that a child was born to her on 11th May after the accident. The complaint alleged "that owing to her delicate condition she received serious and severe nervous shock, causing her intense pain and anxiety." If there was any danger of miscarriage, plaintiff would perhaps be subjected to inconvenience in averting this danger; and this could be considered by the jury as one of the elements of the damage sustained by her from the fall. We find no error in the ruling of the Circuit Judge.

The seventeenth exception complains of the same question asked Dr. Roy which was propounded to Mr. Oliver, and made the ground of the seventh exception. But Dr. Roy

did not answer this interrogatory, and, therefore, this exception need not be further considered.

The eighteenth exception relates to a question asked a witness by plaintiff, to which defendant interposed, "We object," stating no ground of objection. This exception is overruled on the authority of *Youngblood* v. *Railroad Company*, 60 S. C., 9.

The three succeeding exceptions relate to the refusal of a nonsuit, they state the grounds upon which the motion was made and refused. The ticket was an excursion ticket from Columbia to Atlanta, purchased by Mrs. Oliver in Columbia from the agent of the C., N. & L. R. R. Company, with the stipulation that the selling company acted only as agent and was not responsible beyond its own line. Mrs. Oliver signed her name on the ticket assenting to its conditions. The agent of the defendant stamped upon the back of the coupons attached to this ticket the name of the station at which issued, to wit: Columbia, S. C. These coupons were as follows:

1888.    Columbia, Newberry and Laurens Railroad.
Destination Atlanta, Ga., and Return.
Clinton to Station stamped on back.
C. S. & I. E.    22 A.
Destination Atlanta, Ga., and Return.
Subject to the above conditions.
Void if detached.
Via C. N. & L., G. C. & N.
Columbia, Newberry and Laurens Railroad.
On account of Georgia, Carolina and Northern Railroad.
Atlanta to Clinton.
1888.                    C. S. & I. E.    22 A.
Subject to the above conditions.
Void if detached.
Via C. N. & L., G. C. & N.
Columbia, Newberry and Laurens Railroad.
On account of Georgia, Carolina and Northern Railroad.
Destination Atlanta, Ga., and Return.
Clinton to Atlanta.

1888.                    C. S. & I. E.    22 A.
Destination Atlanta, Ga., and Return.
Subject to the above conditions.
Void if detached.
Via C. N. & L., G. C. & N.
Columbia, Newberry and Laurens Railroad.
Station stamped on back to Clinton.

1888.                    C. S. & I. E.    22 A.
Subject to the above conditions.
Void if detached.
Via C. N. & L., G. C. & N.

The nineteenth exception claims that testimony for plaintiff showed that the C., N. & L. Road ran from Columbia only to Dover Junction, on the G., C. & N. Road, two miles short of Clinton, and that there was no contract by defendant to carry plaintiff beyond the terminus of its own road.    In refusing the motion of nonsuit, the Circuit Judge said: "The complaint alleges that this plaintiff bought a first class ticket, purchased from the C., N. & L. to Atlanta by way of Clinton.    There is evidence that the ticket was bought, that she traveled on that road, and when they got near Clinton, it seems from the testimony—Dover Junction, then a section of two miles of road-bed, which at that time was used in common by some arrangement between the S. A. L. and the C., N. & L.    The evidence is that the conductor, the crew who took this plaintiff from Columbia, were still in charge of the train after passing Dover Junction; they were still in charge of the train.    The evidence of Mr. Hill is clear that as an inspector he had not finished his inspection and had not turned it over to the Seaboard, which was to take it on the next division.    He had not turned over the train; he had not received the C., N. & L. train yet, and until his inspection was completed and until he had received the C., N. & L. coaches, the Seaboard Air Line could not take them; so that is for the jury to say how true it is.    How sufficient it is, is a matter for the jury; that the C., N. & L. train had left Columbia and had not been received by the

Seaboard Air Line, although on a piece of road-bed which was used in common by both. Now, it strikes me merely as a fact, what portion of road between the place called Dover Junction—was it a station at all?

"Mr. Lyles: Only a junction. The evidence shows there was no agent there.

"The Court: Was no agent and, therefore, no terminus of any road. Practically, the terminus of the C., N. & L., for all practical purposes, the evidence shows, was Clinton. Under what particular contract with the Seaboard, it matters not at this time. If there was no special contract, there was usage, custom, that the C., N. & L. had the use of that two miles of road-bed to complete its contract from Columbia to Clinton. There is no doubt that if the accident had occurred on the other side of Clinton, the Seaboard would have been the proper defendant, just as much as if it had taken place in Atlanta; but in my mind there is no doubt that, happening where it did, under the circumstances under which it happened, that the C., N. & L. is the proper defendant under this evidence, just as much as if it had happened on this side of Dover Junction. So far as the evidence goes, we need not look beyond Clinton to consider whether the ticket was good to Atlanta or not. A passenger from Columbia to Clinton by the C., N. & L. was entitled to be taken by the C., N. & L. from Columbia to Clinton. So far as this evidence shows, there was one section of the ticket taken up upon which section of the ticket, the passenger was taken from Columbia to Clinton. There is no evidence that the Seaboard had anything to do with that section of the ticket. It was taken by the C., N. & L. conductor, and entitled the passenger to be landed at Clinton. There is nothing to suggest that it could be stopped at Dover Junction, the terminus, so-called, of the C., N. & L. The evidence, therefore, should go to the jury for them to determine whether the C., N. & L. was responsible to take the passengers to Clinton or to stop them at Dover. Whether the liability of the C., N. & L. stopped at Dover or went to Clinton, that must go to the

jury, I cannot decide that." The excursion ticket in this case, issued by defendant and signed and accepted by plaintiff, constituted a contract of carriage. *Bethea* v. *Railroad Company,* 26 S. C., 97, 1 S. E. R., 372; *Samuels* v. *R. R. Co.,* 35 S. C., 501, 14 S. E. R., 943. The defendant by this contract limited its liability to its own line, and contracted for passage from Clinton to Atlanta, and back from Atlanta to Clinton, only as agent for and "on account of G., C. & N. Railroad." But it contracted in its own name and on its own account for carriage from Columbia to Clinton, and back from Clinton to Columbia. The same train, same conductor, same engineer, same coupon, that took the passengers from Columbia to Dover Junction went on without interruption from Dover Junction to Clinton. The ticket and coupons issued to plaintiff by defendant gave to the plaintiff no right to ride upon a train of the G., C. & N. Road from Dover Junction to Clinton. There was in this case a connecting road, but the ticket informed the holder that the change to connecting road was to be made at Clinton, and the conductor so notified the passengers. There was also testimony by witnesses for plaintiff that the railroad from Dover to Clinton was owned by the G., C. & N. Road, and used by trains of that road between Munroe and Atlanta, but that this two miles of road was also used by the defendant's trains between Clinton and Columbia, with an agent and ticket office at Clinton and none at Dover Junction; and that through trains from Columbia to Atlanta were turned over by the C., N. & L. Road to the G., C. & N. Road at Clinton after inspection and acceptance by the agent of the latter road. The Circuit Judge, therefore, properly refused the nonsuit upon the ground complained of in the nineteenth exception. *Kyle* v. *Railroad Company,* 10 Rich., 382; *Piedmont Man. Co.* v. *Railroad Company,* 19 S. C., 369; *Railroad Company* v. *Pratt,* 22 Wall., 131; *Railway Company* v. *McCarthy,* 96 U. S., 266. And as the ticket was a contract by defendant to deliver plaintiff safely to the connecting line

at Clinton, the thirty-first and thirty-second exceptions are also overruled.

Upon the other two grounds relied on in the motion for nonsuit, the Circuit Judge ruled as follows: "As for the other two grounds, I think, from the very phraseology of them, they must be overruled as well as the first, because that depends whether ample time was given by the notice of the conductor to the passengers; that is a question for the jury. The Court cannot take judicial notice as to whether the time was ample or not. This is not a question for judicial notice in this State. I have an idea, Mr. Abney, that in some States they have railroad laws in reference to this.

"Mr. Abney: We have a statute of our own requiring a sufficient length of time of stoppage to take on passengers.

"The Court: But not as to the number of moments?

"Mr. Abney: No, sir; in the case of *Dozier* v. *Railroad,* you will find that the Court decides that is a question for the jury.

"The Court: The Court cannot take judicial notice unless it is fixed by statute, and it is a question entirely for the jury. Now, if ample time was given by the conductor, ample notice, I should say, and sufficient notice as to the time given to the passengers by the conductor to apprise them that when he stopped at Clinton he was going to cut this certain coach loose from the others, so as to put them on their guard, then there might be some force in the argument, but the jury must say whether ample notice was given; whether insufficient instruction was given and what instruction was given; whether they were instructed to go out on the ground, in the weeds, or some other hotter place (referring to the evidence, of course, entirely, gentlemen), or whether they were to go into any other car, because this coach was to go back to Columbia. I cannot say that the conductor gave sufficient notice. That is for the jury to say. I cannot say what notice he gave. It is sufficient to say that if there is evidence that some notice was given, it is for the jury to say

whether sufficient notice was given as to the intention, and whether it was that they were to stay in the car, or go into the other car, or to go out in the road. There is no doubt about the law requiring railroads to provide convenient and safe landing accommodations when they require passengers to get out. That is a matter for the jury to say, as to whether the relation of passenger and common carrier has ceased after the action of the passengers. I do not recollect distinctly any evidence as to whether Mrs. Oliver defied the orders of conductor and kept her seat. It seems to me she was trying to obey his orders, and when leaving the car was injured. It seems to me the motion for a nonsuit should be overruled on all grounds submitted, and that the case should go to the jury, and it is so ordered." The jury were not present in Court when the Judge announced the above rulings of the Court on the motion for nonsuit. The twentieth and twenty-first exceptions complain of this ruling. They will be considered together. Clinton being the point at which defendant was to safely deliver plaintiff to the connecting road, the direction to change cars at this point was not prevented by the terms of this contract of through carriage; and it was the duty of the passenger to obey this proper direction from the conductor. But it was the duty of defendant to afford plaintiff a reasonable time under all the circumstances to make the ordered change. See 5 Am. & Eng. Enc. Law (2d edit.), p. 577, and *Keller* v. *Sioux City & St. Paul R. R. Co.,* 27 Minn., 181. When the plaintiff closed in chief, there was testimony tending to show that three orders had been given to the passengers to change cars—one before reaching Clinton, one after reaching Clinton and the last a little later on. One witness testified that it was "some little while" after reaching Clinton; another said the conductor gave the orders a minute or so after the train stopped, and still another said it was only a minute or so between the second and third orders. It was in the night time; there was testimony that it was dark, a lack of lights at the station, the coach and its steps crowded,

and the other coaches full, no platform on the ground and a ditch near the track; that when the last order of the conductor was given, Mrs. Oliver (who had moved to a seat near the door) got up to go into the next coach and reached the platform, which was full, people standing also on the steps, and that she then fell between the cars as the train was parted. It was certainly the duty of the defendant to afford plaintiff a reasonable time to get out of the coach in which she was. What was a reasonable time depended upon the circumstances, and was a question to be passed upon by the jury and not by the Judge. "A railroad company is in duty bound to stop its train at the station to which it has agreed to carry a passenger and give reasonable time and opportunity for a safe landing. It is also a breach of the carrier's duty to expressly or impliedly invite a passenger to alight from a moving train"—*Cooper* v. *Railroad Co.,* 56 S. C., 93, 34 S. E. R., 16. What time in any case is reasonable is for the jury, where there is any disagreement in the testimony as to the surrounding conditions—*Wiggins* v. *Burkham,* 10 Wall, 129. After a train has stopped a reasonable time, particularly at a terminus, it may be assumed that all passengers intending to alight or change cars have already done so, but the trial Judge should not grant a nonsuit on such an assumption, especially where the conductor, the master of the train, permits a parting of the cars immediately after giving orders to several passengers to promptly vacate the coach from which the train is uncoupled and moved. The Judge properly held that these were matters to be passed upon by the jury.

For the same reason, the twenty-ninth exception is overruled. All of the matters referred to the jury in the sentence of the charge which is made the basis of this exception, were matters to be considered by the jury in determining how much time to vacate was reasonable in this case.

The twenty-second exception in the printed case is marked "ruled out." It is based upon a mistake, as shown by the record.

3—65

Counsel for appellant in their argument complain that the Judge erred in charging upon an issue of contributory negligence, when no such issue was raised by the answer, and further, that the definition given by him of the doctrine of contributory negligence was erroneous. In support of their right to make these objections, they refer to their twenty-third, twenty-seventh and twenty-eighth exceptions. There are certainly no others that make any reference to the matter of contributory negligence, and those just mentioned do not cover the grounds contended for in argument. They will now be considered.

The twenty-third exception quotes the charge where the Judge states the defendant's second defense and comments upon it; and then the exception bases upon this charge a simple allegation of error, to wit: "thereby indicating that the burden was upon the defendant of proving what the plaintiff had alleged in her own complaint— that she remained in the car after orders had been given for her to leave the same." The complaint admits three successive orders by the conductor to the passengers to leave the car, and alleges a reason for failure by plaintiff to heed the first two orders, and narrates the accident that befel her while attempting to comply with the last. The answer alleges that she "carelessly and negligently failed and refused to leave the same for an unreasonable length of time, and that if such injury occurred, it occurred while the agents and servants of this defendant were properly shifting the cars of said train in accordance with the purpose and object of this defendant corporation, and alleges that said injury, if any occurred, was due solely to the negligence of the plaintiff aforesaid." The Judge treated this defense as alleging plaintiff's carelessness or negligence to be the proximate cause of the injury as a plea of contributory negligence, which must be established by the preponderance of evidence. But he certainly did not impose upon defendant the burden of proving what "plaintiff had alleged in her own complaint—that she remained in the car after orders had been

given for her to leave the same." The burden thrown upon defendant by the charge was to prove *careless and negligent* failure on the part of plaintiff to leave the car for an *unreasonable* length of time, but as to this there was no exception, and the correctness of this instruction is, therefore, not properly before this Court.

The twenty-seventh quotes a part of a sentence, and imputes to that quotation the error of putting upon plaintiff the burden of proving only negligence by the defendant, relieving plaintiff of the burden of showing that such negligence was the proximate cause of the injury, and putting upon defendant the burden of proving that such negligence was not the proximate cause. An answer to this may be found in the quotation from the charge contained in the next succeeding exception and in other parts of the charge. But the whole charge upon the question of contributory negligence will be quoted in full. It was as follows : "I charge you also, gentlemen, that, when a defendant, as in this case, in its answer, sets up an affirmative defense, such as contributory negligence, it takes upon itself the burden of proof, and you are to require at the hands of the railroad in this case, evidence to satisfy you that the railroad was not the proximate cause in its negligence, that the railway was to blame; but that Mrs. Oliver, or Mrs. Oliver and her husband, were to blame, and the same measure of proof would be exacted of the defendants, namely, proof to your satisfaction by the preponderance of the evidence, the greater weight of the testimony. By setting up such a plea a defendant, as it were, agrees that plaintiff's allegation may be true; but says even if it be true to a certain extent, even though she may have been injured, it is not their fault, it is her own fault, and being her own fault, she cannot recover. That, in brief, is what is meant by contributory negligence. In such a case there may be evidence that the defendant itself was to some extent negligent; but if defendant's negligence, supposing such to have existed, was not the primary, the proximate cause, the immediate cause of the injury, but the

plaintiff's own negligence was the proximate cause, then even in that case, although defendant may have been negligent, the plaintiff cannot recover damages. It is conceivable that both sides may have been careless, but the burden of proof is upon the plaintiff to satisfy the jury that the carelessness of the defendant was the proximate and immediate cause of the injury, and it is just as incumbent upon the defendant to satisfy the jury that it was the carelessness and negligence of the plaintiff that was the proximate and immediate cause of the injury." Again: "I have explained to you already that the burden of proof is upon the plaintiff to make out her case by the preponderance of the evidence. It is also upon the defendant by the preponderance of the evidence to make out the affirmative defense of contributory negligence." Again, after recess for dinner: "If you find for the defendant, the railway company—which means if you come to the conclusion that the plaintiff or the plaintiffs have not made out their case by the preponderance of the evidence—or if you come to the conclusion that the defendant railroad company has made out its case to your satisfaction by the preponderance of the evidence as to contributory negligence, then you will say, 'we find for the defendant.'" At the conclusion of the charge the following occurred: "Mr. Lyles: After the charge your Honor has given, I hate to call attention to one point, but I think there may be a misunderstanding on the part of the jury as to that—that is instructing them as to the defendant making out its case on the preponderance of evidence. That is—inasmuch as there are two defenses pleaded, one of which is a denial of the plaintiff's complaint—of course, we understand your Honor to mean that the jury need not consider the defendant's defense at all, unless they first reach the conclusion that plaintiffs have overcome our denial by the preponderance of the evidence. In other words, we are entitled to both defenses, we are entitled to stand on our denial at first." "Mr. Crawford: Inasmuch as attention has been directed by counsel on the other side to the particular feature of the case, we request

that the jury be asked in that connection to consider the testimony of Mr. Hasell Gibbes, one of their own witnesses." "The Court must consider the testimony of all the witnesses. I can state to you, gentlemen of the jury, that the answer of the defendant railroad company not only denies the allegations of the plaintiffs' complaint, and, therefore, puts the plaintiffs to prove all their allegations, all the material allegations, by the preponderance of the evidence, but it also sets up an affirmative defense, contributory negligence. As to the first, the allegations of the plaintiffs' complaint, the burden of proof is upon the plaintiffs. If the plaintiffs have established their allegations by the preponderance of the evidence, they would be entitled to a verdict, unless the defendant has established its defense of contributory negligence by a preponderance of evidence." "Mr. Lyles: That is the idea." "The Court: As you understand it, gentlemen, the effect of the pleadings in the answer is that they put the burden of the proof upon the plaintiffs as to the allegations of the plaintiffs' complaint, but they put the burden of the proof upon the defendant as to contributory negligence." It is manifest, therefore, that Judge Benet did not instruct the jury that if any negligence was chargeable to defendant by the preponderance of the evidence in favor of plaintiff, the burden was upon the defendant to satisfy the jury that such "negligence was not the proximate cause of the injury."

The twenty-eighth exception quotes the concluding sentence of our first quotation, *supra.* "It is conceivable, &c.," imputes to it error of requiring defendant, if both sides were negligent, to prove plaintiff's negligence as fully as plaintiff was called upon to prove defendant's negligence. It seems to us the charge fully informed the jury that the primary burden of proof was upon plaintiff to prove her case, and that was that her injury was due to the negligence of defendant; and failing so to do, there was no necessity for defendant to prove anything. If, however, the plaintiff did so prove her case, then in like manner the burden of proving contributory negligence was upon defendant—and this is the

law. *Kaminitsky* v. *R. R. Co.,* 25 S. C., 59; *Railroad Company* v. *Horst,* 93 U. S., 298. But the matter was put beyond dispute by what was charged in reply to Mr. Lyles' suggestion. This exception is overruled.

We cannot find in any of these three last exceptions any suggestion of error in the definition of contributory negligence, except so far as we have considered the errors alleged. Nor can we find in them any imputation of error to the Judge in treating contributory negligence as an issue in the case. If such error was committed, appellant cannot complain on appeal, as counsel did not call the presiding Judge's attention to such error—*Brice* v. *Cayce,* 62 S. C., 563. And it was harmless to defendant—*Sims* v. *Railway Company,* 59 S. C., 255.

The charge of the Judge as to damages was as follows: "I think, gentlemen, that you have some idea as to what are the main points of dispute between the C., N. & L. R. R. on the one hand, as defendant, and the plaintiff, Mrs. Alice E. Oliver, on the other. She seeks at your hands a verdict for both actual and punitive damages. By actual damages is meant in law such damages as the testimony will justify the jury in awarding to recompense the plaintiff for loss of time or money—incurred expenses, for bodily injuries, for mental pain and suffering, for being rendered less able to attend to the ordinary duties of life, for the permanency of the injuries, small hope of recovery, and the like; and a jury is justified in taking into consideration evidence of all such matters in awarding a verdict for actual damages, a sum of money to pay back to the plaintiff, in a measure, the loss which she has sustained. The second kind of damages, called punitive damages, are sometimes spoken of as vindictive damages and exemplary damages; indeed, they are sometimes referred to as smart money and blood money. They are called punitive damages because of the theory that such damages will act as a sort of punishment of the defendant for such wrong doing—not only as a punishment for past wrong doing, but to deter the defendant and

others in similar business from repeating such wrong doing in the future. Such damages are allowed in law, and they operate almost like fines imposed in the criminal Court. They are allowed not so much to compensate the plaintiff or to enrich the plaintiff, but for the public good, to punish the defendant; therefore, they are called punitive damages. Hence, also, they are spoken of as exemplary damages, that they may act as a warning, not only to the defendant, but to others occupied in the same business, by thus making an example of the defendant, for the benefit of others. They are sometimes called also, vindictive damages, as giving expression to the sentiment of just indignation which certain forms of wrong doing are bound to excite in the breast of right thinking men. I have said also they are called, but less happily, smart money, or blood money. You will bear in mind the fact that while such damages are allowed in cases where only ordinary negligence is proved as a cause of the injury, before a jury can be justified in assessing punitive damages, there must be clear proof by preponderance of the evidence of gross negligence, wanton, wilful, reckless negligence, as shows an utter disregard of the rights of others, of the lives of persons—or property. It is important, therefore, gentlemen, that it should be made plain to you what is meant by negligence, whether ordinary or gross and wanton negligence, because you ought to decide from the testimony whether the plaintiff in this case has proved to you whether the defendant was guilty of actual negligence, and also of wanton negligence or gross negligence, or of either and both. If you come to the conclusion that the plaintiff has proved that the defendant was guilty of ordinary negligence, and that negligence was the cause of the injury, then it would justify a finding of actual damages, an amount of money sufficient to recompense the plaintiff and no more; but if you come to the conclusion that the plaintiff has proved to your satisfaction that the defendant was guilty of gross, wanton or wilful negligence, such as shows a thorough disregard of the rights of the plaintiff in this case, you will be

allowed to find not only actual damages, but in addition thereto an amount sufficient, in your opinion, to punish the defendant; of course, not exceeding the amount claimed—$10,000. All that the Court can do in that matter is to explain what is meant by negligence, and define actual and ordinary negligence and gross and wilful negligence; but you, as a jury, must decide the facts. You alone can decide whether the defendant was guilty of negligence at all, and, if so, whether it was ordinary negligence—want of care—or wilful and wanton negligence. It is a mixed question of law and fact. The Court will endeavor to define the law, and the jury must decide from the testimony whether negligence has been proven. Of course, the word negligence simply means a want of care; ordinary negligence means want of ordinary care. What is the measure of care which should be observed by a person or corporation under given circumstances? As to that, gentlemen, there is no hard or fast rule that can supply you with a definite measure to apply like a yardstick, or a bushel measure, to ascertain whether the defendant in a particular case has been guilty of such negligence. The measure of care must be decided by the jury in accordance with the evidence in the particular case. All that the Court can say is that the amount of care which should be exercised by the defendant in a given case is just such an amount of care as common sense and reason would lead us to expect should have been exercised under the circumstances, by a person of ordinary intelligence and prudence. That definition, if it can be called a definition, shows that the measure of care will vary in varying cases because of the varying circumstances. Hence, a jury in each particular case must decide for itself what amount of care should have been exercised under the circumstances. This negligence may be shown by what was done by a defendant, but may also be shown by evidence of what was not done, which ought to have been done by defendant. Negligence, shown by acts that have been done, may be defined in this way: doing that which a man of ordinary prudence and intelligence would

or should not have done under the circumstances.    Negligence by omission, by leaving undone what ought to have been done, may be defined thus; failing to do what a man of ordinary prudence and intelligence would or should have done under the circumstances.    Thus far, gentlemen, for ordinary negligence.    If one is injured because of such lack of care, then he has his cause of action for damages against the person or corporation thus negligent; but only in such case for actual damages—damages that may recompense for loss or injury; but where a plaintiff seeks damages for gross or wanton negligence, then the jury must look in the testimony for more than proof of ordinary negligence; must look for proof of more than ordinary want of care.    It implies wilfulness, recklessness, rashness, utter disregard of the rights of others, it may be of their lives or persons, or their liberty or their property.    Thus gross negligence also may be shown by acts of commission as well as acts of omission: 1. By wilfully or wantonly doing something which shows utter disregard.    2. It also may be shown by evidence of the recklessly omitting to do something, the failure to do which shows such gross or utter disregard.    Such negligence, gross, wanton, wilful, in case of injury, will give the person injured a cause of action, not only for actual damages but for punitive damages—indeed, might give him his right of action for punitive damages without a claim for actual damages.    This last form of negligence, as well as first, is alleged in the complaint; therefore, gentlemen, if in this case it is established to your satisfaction, by the preponderance of the evidence, then your verdict would be a sum of money representing, not only actual injury sustained or compensation for this injury, but also an additional amount, as I have said before, to punish the defendant, to make an example, so as to keep the defendant and others in the same kind of business from such wrong doing, if such be proven." Portions of this charge are quoted in the twenty-fourth and twenty-fifth exceptions, to which the error is imputed of "thereby indicating that it was competent for the jury in a

civil action between individuals, to visit punishment upon the defendant for the public good." In the case of *Duckett* v. *Pool,* 34 S. C., 324, 13 S. E. R., 542, Mr. Justice McIver thought the weight of argument sustained the view of Mr. Greenleaf—that in no case should damages be awarded against a defendant in a civil action by way of punishment. But he says that a long line of cases have held otherwise, and that in proper cases exemplary damages may be allowed, "by way of punishment to the defendant as a means of deterring him and others from committing like wrongful and wanton acts (*Johnson* v. *Hannahan,* 3 Strob., 432), where the idea of punishment of the defendant is plainly recognized as one of the elements entering into the assessment of damages." Many other cases are there cited to show that these damages are to be inflicted as *punishment* and to prevent such acts in future; and see, too, *Watts* v. *Railroad Co.,* 60 S. C., 73. In this last case, this Court said: "Exemplary or punitive damages go to the plaintiff, not as a fine or penalty for a public wrong, but in vindication of a private right which has been wilfully invaded; and, indeed, it may be said that such damages in a measure compensate or satisfy for the wilfulness with which the private right was invaded, but in addition thereto operating as a deterring punishment to a wrong doer and as a warning to others." While, therefore, exemplary damages are not awarded "as a fine or penalty for a public wrong," they are awarded as a "punishment" to the wrong doer for the wilful invasion of a private right, "and as a warning to others." And this, as Judge Benet charged, is "for public good"—an example—"for the benefit of others." These two exceptions are overruled.

The twenty-sixth exception imputes two errors to the portion of the charge quoted—the first being that the jury were instructed, "that an action for such (punitive) damages might be maintained by a plaintiff who had established no claim for actual damages and had received no actual injury." It is certainly true, that no one has a cause of action against a railroad company for

negligence unless such negligence injured him. But the jury were not instructed in this case as claimed in this allegation of error. The Judge charged: "Such negligence, gross, wanton, wilful, in case of injury, *will give the person injured* a cause of action not only for actual damages, but for punitive demages—indeed, might give him (*i. e.,* the person injured) his right of action for punitive damages without a claim for actual damages." The Judge was, in this last sentence, speaking of the character of the damages which the plaintiff, if injured, might claim as a recovery, but he made it very plain that there could be no recovery if the plaintiff had sustained no injury. And again, he further charged on defendant's request, "That this action is based upon an allegation of negligence on the part of the defendant company, and the plaintiff can recover only upon proof by a preponderance of the evidence of some act of negligence of the character alleged in the complaint which caused the injury." And that was the injury *to plaintiff*, alleged in the complaint.

The second alleged error complained of in this twenty-sixth exception is that this part of the charge indicated to the jury "that if such negligence was established to the satisfaction of the jury by the preponderance of the evidence, it would be their duty to give a sum of money representing not only damages for actual injury sustained, but also an additional amount to punish the defendant." This alleged error has been disposed of in the consideration of the twenty-fourth and twenty-fifth exceptions, except so far as it involves, under the words "such negligence," as appellant in argument contends, an erroneous statement of what is necessary to constitute that degree of negligence which would justify exemplary damages. The charge, after speaking of ordinary negligence, proceeded: "But where a plaintiff seeks damages for gross or wanton negligence, then the jury must look in the testimony for more than proof of want of ordinary care. It implies wilfulness, recklessness, rashness, utter disregard of the

right of others, it may be of their lives, or their persons, or their liberty, or their property. Thus, gross negligence also may be shown by acts of commission as well as acts of omission: 1. By wilfully or wantonly doing something which shows such utter disregard. 2. It may also be shown by evidence of the recklessly omitting to do something, the failure to do which shows such gross or utter disregard. Such negligence, gross, wanton, wilful, in case of injury, will give the person injured a cause of action not only for actual damages, but for punitive damages." This charge is very far from stating that gross negligence alone will entitle plaintiff to exemplary damages, which would have been error, under the case of *Watts* v. *Railroad Company*, 60 S. C., 73. On the contrary, the jury were clearly instructed that the jury must find evidence of "wilfulness, recklessness, rashness, utter disregard of the rights of others." It was "such negligence" on the part of the defendant that entitled plaintiff to punitive damages. And in this instruction there was no error of which appellant can complain—*Appleby* v. *Railroad Company*, 60 S. C., 56-7; *Brassington* v. *R. R. Co.*, 62 S. C., 331. The twenty-sixth exception is overruled.

We find no error in the portion of the charge complained of in the thirtieth exception. We think that section 1687 of the Revised Statutes of 1893 does apply to excursion trains, so far as it requires that trains stopping at a station "to receive and let off passengers" shall stop "for a sufficient time" for that purpose.

Exception thirty-three cannot be sustained. The qualification made by the Judge to defendant's request was proper, inasmuch as there was testimony to the effect that the uncoupling followed quickly the conductor's last order to vacate at the time of his notification to them that the coach was going to be side-tracked. It was for the jury to say whether that was sufficient warning.

Exceptions thirty-four, thirty-five and thirty-six may be considered together. Where two connecting railroad com-

panies unite in running an excursion train, and the initial company uses two miles of the track of the terminal company before surrendering the control of the train to the terminal company, the conductor being an employee of the initial company, though moving his train for said two miles under orders of the owner of that track, the initial company is liable for negligence resulting in injury to a passenger, until the passenger is safely turned over to the terminal company at the point where the train is surrendered by the one and accepted by the other. These exceptions are overruled.

We find no error in submitting it to the jury to inquire whether any witness had a personal interest in the event of the trial, or in instructing them to endeavor to reconcile conflicts in the testimony, if any such conflict was found to exist.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MESSRS. R. W. SHAND *and* LEROY F. YOUMANS *sat in this case in place of* MR. JUSTICE JONES, *disqualified, and* MR. CHIEF JUSTICE MCIVER (*sick.*)