8486

HANKINSON v. CHARLESTON AND WESTERN CAROLINA RY.

1. RAILROADS—NEGLIGENCE—ISSUES.—Whether it is negligence in using a railroad spike for a bolt in riveting a frog plate is a question of fact.

2. EXPERT EVIDENCE.—A prudent man is not disqualified as an expert in a line of work because he has never done a particular piece of work in the manner alleged to be dangerous.

3. RAILROADS—MASTER AND SERVANT—RISKS.—Whether the danger of a spike head flying when cut off with a cleaver is an ordinary risk assumed by the servant is a question of fact.

4. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—That a tool is placed by the representative of the master and by him the servant is directed how hard to strike do not make a conclusive case of contributory negligence where the inference might be drawn from the evidence that the master knew the danger and the servant did not.

5. RAILROADS—NEGLIGENCE.—If in this case the Court had charged that a railroad spike is not an unusually dangerous tool or appliance, he would 'have charged that there was no negligence in substituting a spike for a rivet.

6. EVIDENCE.—That a section master some months before an accident had noticed a defect in a frog plate is competent on the issue of emergency in repairing the plate.

7. IBID.—RAILROADS.—Remonstrance of section master with road master against an appliance, immediately before its use is competent on the issue of wilfulness.

Before COPES, J., Aiken, Spring term, 1912.    Affirmed.

Action by Judson Hankinson against Charleston and Western Carolina Railway Company.    Defendant appeals.

*Messrs. F. B. Grier* and *Gunter & Gyles,* for appellant. *Mr. Grier* cites: *No actionable negligence shown:* 61 S. C. 494; 41 S. C. 388; 1 La Batt. 66, 72; 11 L. R. A. (N. S.) 1041; 83 Am. St. R. 671; 116 Am. St. R. 373; 72 S. C. 401; 45 L. Ed. 363.    *Plaintiff assumed the risks:* 1 La Batt., secs. 372, 260, 263; 72 S. C. 242, 402; 71 N. E. 192.

*Messrs. Gunter & Gyles* cite: *Who is an expert?* 1 White on Per. Inj., sec. 98; 99 S. W. R. 611; 59 S. C. 314.    *Risk was assumed by servant:* White on Per. Inj., secs. 322, 341; 50 S. W. R. 87; 72 S. C. 24; 55 S. C. 488; 68 Ga. 699; 77 S. C. 351; 96 Fed. R. 298; 21 S. C. 546; 68 Ga. 699; 72 S. C. 348; 86 S. C. 72.    *This is usual way of making such repairs:* 154 N. C. 399.

*Messrs. Hendersons,* contra, cite: *Plaintiff entitled to protection of sec. 15 of art. IX of Con.:* 82 S. C. 299; 86 S. C. 300; 61 S. C. 480.    *Defendant was guilty of actionable negligence:* 52 S. C. 442; 156 U. S. 399; 20 Ency. 76, 77; 38 S. C. 213; 75 Am. St. R. 593; 92 S. C. 236; 56 S. C. 455; 82 S. C. 305; 93 S. C. 117; 89 S. C. 389; 82 S. C. 549; 80 S. C. 539.    *Assumption of risks and contributory negli-*

*gence is for jury:* 92 S. C. 236; 93 S. C. 115.  *Evidence as to unsafe condition competent:* 75 S. C. 190.  *Whether a witness is an expert is for trial Judge:* 91 S. C. 539; 2 Elliott, sec. 1036; 38 S. C. 200; 92 S. C. 304.

March 26, 1913.  The opinion of the Court was delivered by

MR. JUSTICE FRASER.  This is an action for personal injury.  After eliminating the unnecessary matter contained in this case, the issues are narrowed to two questions: 1st. Negligence on the part of the master.  2d. Assumption of risk on the part of the servant.

The undisputed facts are as follows: The plaintiff was a section hand in the employ of the defendant, on the line of defendant's road, where the plaintiff was working, there was a switch.  The "frog plate" of the switch was held in place by three rivet bolts, one was missing.  The road master saw the defect and called the attention of the section master to it and demanded its immediate repair.  There being no rivet bolts convenient, the road master selected a railroad spike and ordered the plaintiff and one of his colaborers to drive the spike in place of the missing bolt.  When the spike was driven as far as it could go, it left the head of the spike protruding above the plate of the frog, and then the road master ordered the plaintiff and his colaborer to cut off the head of the spike with a cleaver and hammer.  The plaintiff used the hammer.  The plaintiff at first struck too hard and was ordered to strike lighter blows.  He obeyed the order, but when the last blow was struck, the head of the spike flew off and hit the plaintiff in the eye and put it out.  The plaintiff claimed, among other things, that the use of the spike was negligence, in that it necessitated the cutting off of the head after it had been driven into its place and it was dangerous and unusually dangerous to do so.  The defendant claimed that cutting off the heads of spikes in this way was an ordinary risk and that the injury was caused by too hard

a blow; that the plaintiff delivered the blow and was the author of his own injury. The judgment of the Circuit Court was for the plaintiff and defendant appealed on four exceptions. We will adopt the statement of one of the appellant's counsel:

1. "That the testimony fails entirely to establish any actionable negligence as a cause of the alleged injury."

The controlling question in the case was, was it negligence to cut off the spike in the manner in which it was cut off? Appellant says it was an everyday occurrence. Was it? This Court does not know. The trial Judge did not know. It was a question for the jury. The plaintiff said he had been working for the railroad for thirteen years, but had never cut a spike before. A witness for plaintiff said he had been section master doing this very kind of work, but he had never cut off a spike head in this way, and, in his opinion, it was dangerous. One of appellant's witnesses said the danger was that the head would "fly." Appellant complains that respondent's witness disqualified himself as an expert when he said he had never done the thing that way. It can not be held that a prudent man is not competent to say what is dangerous, because he has always pursued the safe way. A prudent man ought to know the dangerous way in order to avoid it, as well as the safe way in order that he might pursue it. Both the plaintiff's witness and the defendant's witness said that the thing that did happen was likely to happen, to wit, that the head would "fly."

This Court can not say that there was no evidence from which the jury might infer negligence, and this proposition can not be sustained.

2. "That the testimony shows conclusively, and from which only one inference can be drawn, that plaintiff's injury was due to one of the risks which he assumed when he entered the employment of the company."

This position can not be sustained for two reasons: The servant assumes the ordinary risks and does not assume the risk that arises from the negligence of the master. Was the risk of injury from a flying spike head cut off in this way one of ordinary risks of the employment, and was it negligence? Both were open questions to be determined by the jury.

3. "The testimony shows that the plaintiff's injury in any view, was the result of his own contributory negligence, as the direct and proximate cause." Not in any view. Of course, this Court does not know what the facts of this case may be, and there is no inclination to determine the facts. There is this view of the testimony which the jury had the right to take, that threw the responsibility on the appellant. The respondent was called upon to perform a service in a manner in which he had never been called upon to perform it before. The cleaver was fixed by the representative of the master and the respondent was told to strike here. He was told how hard to strike. The jury could infer from the testimony that the road master knew the danger. They could infer from the testimony that the respondent did not. They could infer that the master who had selected the spike placed the cleaver, directed the force of the blows up to the critical moment, suddenly abandoned the servant to his own device when he needed the direction most. It is said that the respondent admitted that the undertaking was dangerous and that he knew it. The questions referred to the time of the trial and not to the time of the injury.

Appellant complains that his Honor did not charge, "I charge you that a railroad spike is not an unnecessarily dangerous tool or appliance." There was no claim that the spike, as a spike, was defective. The claim was that the spike was not suitable to be used as a rivet. The spike was "square." The rivet was round. The rivet was screwed into place without any cutting and the

spike necessitated the cutting which was dangerous.    If his Honor had so charged he would have charged that there was no negligence in substituting the spike for the rivet, and he could not so charge.

There are two other specifications of error.    The witness, Meyer, was permitted to testify that some months previous to the injury, when he was section master, he had complained of this defect in the frog plate.    This was relevant. The road master said the rivet was not out a few days before the injury.    It was the province of the jury to say which one they would believe.    If it had been repaired in the *interim,* the appellant could have shown that it had been repaired.    The appellant wanted to show that there was an emergency and a necessity for an immediate action.    The respondent wanted to show that there was no necessity for immediate action and if it had stood for five months it could stand for a few days more until a suitable rivet could be secured or a new frog plate procured.

Again, appellant complains that respondent was allowed to introduce testimony as to a conversation between the section master and the road master in which the section master protested against the use of the spike because it was likely to produce trouble.    The conversation is alleged to have taken place immediately before the accident and as a preliminary to the repair.    The question of wilfulness was then before the Court and the testimony was competent.    It was a part of the transaction.

The judgment of this Court is that the judgment appealed from be affirmed.