14291

COBB v. SOUTHERN PUBLIC UTILITIES CO.

(187 S. E., 363)

Before OXNER, J., Greenville, June, 1934.

*Mr. W. G. Sirrine,* for appellant,

*Messrs. J. Robt. Martin* and *J. Robt. Martin Jr.,* for respondent,

May 11, 1936.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The history of this case, E. H. Cobb, as administrator of the estate of Florence Cobb, deceased, plaintiff-respondent, against Southern Public Utilities Company, defendant-appellant, instituted in the Court of Common Pleas for Greenville County, briefly stated, is as follows: On June 6, 1933, Florence Cobb was alleged to have received personal injuries by a truck backing across a certain sidewalk in the County of Greenville, this State. Two suits were filed on June 28, 1933, one by Florence Cobb for personal injuries suffered, the other by E. H. Cobb, her husband, for loss of services and consortium. The defendant filed an answer in each cause. These suits were put on Calendar 1 for trial and were awaiting trial on said calendar when the said

Florence Cobb, on January 11, 1934, died. Thereafter, by consent of the interested parties, an appropriate order was issued by the Court, signed by his Honor, Judge G. B. Greene, under which the survival action involved in this suit was substituted for the personal injury action instituted by the said Florence Cobb, deceased, and the Lord Campbell action was substituted for the loss of services, consortium, etc., instituted by the said E. H. Cobb.

The record discloses that in his complaint the plaintiff alleged that on June 6, 1933, an agent of the defendant backed a truck from a driveway in the village of Sans Souci upon the sidewalk of the Buncombe road, striking the deceased, the said Florence Cobb, and causing her death. In the answer filed in the cause, the defendant, while admitting that the driver of the truck was the agent of the defendant, denied the material allegations of the complaint; and as a further defense the defendant denied that the truck in question struck the said Florence Cobb and alleged that her injury was caused by her tripping on the sidewalk. In the third defense interposed, the defendant alleged contributory negligence. The defendant also interposed a fourth defense and under this defense alleged that the death of Mrs. Cobb was caused from an incurable disease.

The two cases were tried together at the June, 1934, term before his Honor Judge G. Dewey Oxner, and a jury. In the suit brought under Lord Campbell's Act (Code 1932, §§ 411, 412), the jury returned a verdict for the plaintiff for the sum of $500.00, but under the survival Act (Code 1932, § 419), a verdict was rendered for the defendant. Thereafter, the Judge set the verdict aside in the suit brought under the Survival Act, and upon a new trial being had in said cause before his Honor, Judge Featherstone, and a jury, a verdict was rendered for the plaintiff in the sum of $3,000-.00. It further appears from the record that his Honor, Judge Featherstone, set aside the verdict for $3,000.00 in the suit under the Survival Act and ordered a new trial thereon, and the suit under the Survival Act was tried for

the third time; this trial being held May 20, 1935, before his Honor, Judge G. Dewey Oxner, and a jury. Under the third trial of this case a verdict was rendered for the plaintiff in the sum of $2,000.00. In this connection it is well to state that during the third trial of this suit, instituted under the Survival Act, the defendant made a motion for a mistrial of the case upon the ground that "certain evidence was alleged to be privileged and prejudicial." This motion being refused, the defendant also made a motion for direction of a verdict for the defendant, which motion the trial Judge also overruled. After the rendering of the verdict for the plaintiff, the defendant also made a motion for a new trial. The motion for a new trial being refused, from the judgment entered on the verdict for the plaintiff, the defendant has duly appealed to this Court.

In the appeal to this Court appellant presents many exceptions under which errors of law are imputed to the trial Judge, but in the brief filed with the Court appellant states, in effect, that the following constitute the errors of law raised for the consideration of this Court:

"Errors of law ascribed by exceptions are as follows: (1) Permitting Loucile Cobb to testify to declarations of deceased. (2) Permitting same witness to testify to declarations of Mack Johns. (3) Admitting in evidence notice of taking deposition, when no deposition was taken. (4) Permitting plaintiff's counsel to testify to a conversation with plaintiff in regard to taking the proposed deposition. (5) Failing to withdraw a juror and grant the motion for a new trial. (6) Refusing the motion for a directed verdict for the lack of sufficient evidence. (7) Permitting certain argument of plaintiff's counsel to the jury. (8) Charging incorrectly on proximate cause. (9) Charging incorrectly on concurrent cause. (10) Charging incorrectly on recovery for negligence not alleged in the complaint. (11) Charging that retention of the agent in employment may be considered as ratification of the 'acts complained of.' (12) Refusing the motion for a new trial."

For the purpose of a clearer understanding of the case involved, we call attention to some of the important allegations set forth in the plaintiff's complaint: In the operation of the defendant's business with the public, in the said County of Greenville, the defendant owns and operates, with its agents and servants, a truck used in conveying supplies and certain fixtures, as well as certain of its agents and servants, from place to place in the conduct and in the course of its business; and on the day in question, June 6, 1933, "while the plaintiff's deceased, Florence Cobb, was walking upon the west sidewalk of Buncombe Street, coming southward toward the center of the city, traveling a much frequented thoroughfare of the County for pedestrians as well as vehicles, the defendant through and by its agents and servants, from a narrow and private driveway, suddenly with great force and speed ran one of its trucks from private lot onto said sidewalk without notice or warning or proper protection and outlook, onto and against said Florence Cobb, striking her on the right hip and side, knocking her a great distance on to the street, fracturing ribs on left side, severely crushing and bruising side and chest, lacerating and cutting her head and face, causing her to undergo painful medical treatments, to suffer great pain of both body and mind, and incur great expense, and loss of services from date of injury up to her death."

It is the contention of the plaintiff, as set forth in the plaintiff's complaint, that the injuries to the said Florence Cobb resulted from and were caused by the negligent and reckless acts of the defendant, its agents and servants in charge of and operating its said motor vehicle at the time and place in question, and failing to give adequate warning to the said deceased, as well as the public also, in backing the said truck onto the much-traveled sidewalk of the said city, and in failing to keep a proper lookout for the said deceased, as well as other members of the public, in backing said truck without notice and without warning at a high and reckless rate of speed at the time and under the surrounding

circumstances. It is the further contention, as set forth in the complaint, that the defendant and its agents in charge of the said truck and in handling and directing the same failed to station an agent on the sidewalk in question for the purpose of giving notice of the said truck backing upon the said sidewalk and for the purpose of protecting the plaintiff and other members of the public from getting injured at said place. We may state further that, in effect, the allegations of the complaint are that the death of the said deceased, Florence Cobb, and the injuries, pain, and suffering she endured prior to her death, were each and all caused by the aforesaid delicts and failure to perform the duties which the defendant, its agents and servants, were under obligation to perform at the time and place in question, resulting in the damage alleged by the plaintiff.

The grounds of defense, set forth in the defendant's answer, are stated above, and need not here be repeated.

The first question presented at the threshold of the case, though not in the order presented by appellant, is the question raised regarding the allegation of error imputed to the trial Judge in refusing to direct a verdict on defendant's motion on the ground of lack of sufficient evidence to support a verdict, covered by the sixth exception and that portion of the twelfth exception bearing on the same question. It would serve no useful purpose to quote all of the testimony, or even the essential parts of the testimony, or enter into a discussion of the same herein, bearing on this question; but we deem it sufficient to state that a careful consideration of the testimony and the record in the case presented on the trial of the case convinces us that the trial Judge committed no error in overruling the motion for a directed verdict. The exceptions raising this question are therefore overruled.

The first and second questions presented by the exceptions, according to statement of appellant's counsel, set forth in the brief filed with this Court, impute error to the trial Judge in "permitting Loucile Cobb to testify to declarations

of deceased" and "permitting the same witness to testify to declarations of Mack Johns." The testimony of Loucile Cobb, which gives rise to Exceptions 1 and 2, as set forth in the brief filed by appellant, reads as follows:

"Q. Miss Loucile, you are the daughter of Mr. E. H. Cobb? A. Yes, sir.

"Q. And I believe you lived in the home with him and Mrs. Florence Cobb, your stepmother, at the time of this collision? A. Yes, sir.

"Q. Who else besides the family roomed or boarded there, if anyone? A. Miss Evans.

"Q. Miss Dorothy Evans? A. Yes, sir.

"Q. On this afternoon were you at home? A. Yes, sir.

"Q. Do you recall Mrs. Cobb, your stepmother, going to the store? A. Yes, sir.

"Q. About what time of the evening was it? A. I will say it was after seven o'clock; little after seven.

"Q. With reference to sundown, was it sundown or after? A. Maybe a little after or just about sundown.

"Q. Had you all eaten supper? A. Yes, sir.

"Q. Gotten in from your work; were you working at that time? A. At that time I worked at the Linen Supply.

"Q. Where did Miss Evans work? A. St. John.

"Q. That is the sewing factory? A. Yes, sir.

"Q. What is the first you knew of this? A. The little Johns boy ran up to the yard and hollered Mrs. Cobb was hit by a truck."

To the last-mentioned answer given by the witness Miss Loucile Cobb, counsel for the defendant interposed objection, and the following transpired in the trial of the case:

"By Mr. Sirrine: I object to that and move to strike out what the little Johns boy said.

"The Court: You are trying to get it in as part of the *res gestae?*

"By Mr. Martin: Yes, sir, of course, that is as far as I am going with any conversation, if your Honor please. That is an ejaculation or outcry.

"The Court: The witness testified that he went a block.

"By Mr. Martin: Yes, sir, and went across the path; and he has already given the exact statement himself.

"By Mr. Sirrine: That is one reason I object to what he said; he testified and the jury heard him; now, if this witness testified that she learned her mother had been hit, from the Johns boy, too, I do object to what the Johns boy said; he testified and the jury has had opportunity to judge of the credibility and the weight of the testimony.

"The Court: I think, Mr. Martin, you better confine it to that.

"By Mr. Martin: May it please the Court, you are aware of the fact this question has been up before; your Honor had that same question, there is no question about it, the boy running immediately—

"The Court: He didn't testify that he ran.

"By Mr. Martin: Yes, sir, he certainly did; he testified he saw the man stop the car and he came to pick the lady up and he ran and hollered.

"The Court: I don't know as it is very material one way or the other, as the boy had already testified to it.

"By Mr. Martin: And he gave the distance from where he sat across yonder to that building.

"The Court: Go ahead; I don't know, he has already testified to it; anyway, I will admit it."

In addition to this information, given above, we may also state that our examination of the record discloses that the boy Mack Johns had, in the course of his testimony, testified that he was running at the time referred to by counsel, and we think his Honor, the trial Judge, committed no error in permitting the introduction of the testimony complained of. It seems to us that under the surrounding circumstances the testimony allowed was proper under the rule of *res gestae*. Further, as stated by the trial Judge in ruling on the introduction of the testimony, the boy Mack Johns had already testified to what the witness Loucile Cobb said she heard him state.

With regard to the error complained of in permitting the witness Loucile Cobb to state, during the course of her testimony, the words she heard the deceased, Florence Cobb, utter when she (Florence Cobb) was awakened after receiving the injuries in question, we are unable to agree with appellant, and the exception charging this error is overruled. An examination of the record convinces us that the utterances made by Florence Cobb, the deceased, following the injuries in question, were spontaneous, being made immediately after she was awakened from the collision which rendered her unconscious. The statement by the deceased might reasonably be classed as exclamatory and, in our opinion, his Honor committed no error in his ruling thereon and in permitting the witness Loucile Cobb to repeat the words she heard Florence Cobb utter spontaneously at that time regarding the transaction in question. In this connection we quote the following from the record, bearing on this particular question:

"Q. How was she (Florence Cobb) carried home? A. In the truck with Mr. Ward.

"Q. Well, tell us— A. We helped her to the truck, myself and I think Miss Evans, we put her in the truck and taken her home.

"Q. Did your father go along with you in the truck or do you recall? A. I don't recall at the time.

"Q. Then Mr. Ward did assist in driving her home, carrying her to your home? A. Yes, sir.

"Q. Was she conscious when she got home? A. No, sir, she was not.

"Q. How long would you say; were there any ladies of the neighborhood come in? A. Yes, sir, Mrs. Holder, and later Mrs. Sunny came in.

"Q. How long would you say before she regained her consciousness? A. Well, I can't say exactly, but I think we had gotten her to bed.

"Q. Gotten her to bed? A. Yes, sir.

"Q. When she did did she make any remark as to how she got hurt? A. Yes, sir, she said a truck hit her.

"By Mr. Sirrine: Wait a minute; I object to that.

"The Court: Wait a minute—

"By Mr. Martin: I respectfully submit that is competent; I have two authorities on it.

"The Court: Just a minute, Mr. Martin.

"Q. When did you say, how long did you say your stepmother, I believe it is your stepmother? Yes, sir.

"Q. How long was she unconscious? A. Until we got her to bed.

"Q. Now, the remark you are undertaking to testify to, how long was that after you came up to the McLure house in order to move her, carry her home? A. You mean time we got there and got her to bed?

"Q. Yes, ma'am? A. I will say around fifteen minutes or twenty.

"Q. Were you with her during all that time? A. Yes, sir.

"Q. And she was unconscious during that period? A. Yes, sir."

In addition to what we have stated above, we wish to further call attention to the fact that in passing upon questions regarding the introduction of testimony of the nature involved herein, the same must largely be left to the wise discretion of the trial Judge, for he has an opportunity to hear the witnesses testify and is well able to judge the force and effect of such testimony and understand the connection and circumstances involved at such time. These exceptions are overruled.

In the third exception appellant imputes error to the trial Judge in admitting in evidence "notice of taking deposition, when no deposition was taken." In our opinion, the appellant was not prejudiced by this action. The exception is therefore overruled.

Under the fourth exception appellant charges error in "permitting plaintiff's counsel to testify to a conversation with plaintiff in regard to taking the pro-

posed deposition." The question involved in this exception, as well as that involved in the third exception, it seems, grew out of an effort on the part of the plaintiff, or his counsel, to procure the testimony of the said Florence Cobb and an agreement with counsel for the defendant in connection therewith. It further appears that on account of the extreme illness of Mrs. Cobb from day to day the testimony was not taken and she finally died. On the trial of the case there was an effort made by counsel for the plaintiff to explain to the Court and jury the failure to take the testimony. Counsel for the plaintiff examined the plaintiff in respect to Mrs. Cobb's condition as it existed from day to day, so that the jury was given the benefit of her condition as it had existed from time to time. Counsel for the plaintiff also testified in the case with the view of explaining the situation. In our opinion, the appellant was not prejudiced by any ruling of the trial Judge in this connection. The exception is, therefore, overruled.

Appellant's fifth exception reads as follows:

"Error in failing to grant the motion to withdraw a juror and direct a mistrial when six members of the former jury were put on the stand in reply.

"Specification. (a) The jurors were not competent because they testified to an occurrence which took place during the trial while out of the court room in custody of the bailiffs. (b) It was not necessary for the jurors to testify since any facts which they could have learned by sitting in the swing in February, 1935, could have been proven by any other person. (c) The presence of six members of the former jury in reply destroyed the atmosphere of impartiality in the court, and created a condition of prejudice to the rights of the defendant which it was impossible to overcome except by a mistrial. (d) The use of the six jurors to show the condition of the trees and hedge in the Ferguson yard in February 1935, tended to confuse and prejudice the minds of the twelve jurymen as to the condition in June, 1933, and prevented the defendant from obtaining an impartial trial.

(e) Interfered with the constitutional rights of defendant guaranteed by Article 1, Section 5."

It must be borne in mind that this was the third trial in the case, and we know of no sound reason why jurors on a former trial should not be permitted to testify to facts that occurred during such former trial or to the scenes that surrounded the place or places in question at the time of such former trial or trials. The exception is overruled.

The sixth exception we have already disposed of.

Appellant's seventh exception is in the following language:

"Error in not ruling in favor of the defendant on objection to the argument of plaintiff's counsel to the jury that the argument could not be directed to previous trials. The witness was asked, 'You have not found out any more than you had on the other two trials as to where you were making that particular call.' (referring to another call made by Buddy Ward).

"Specification. The error consists in the Court ruling, 'Well go ahead' when his Honor should have adhered to his rule that nothing occurring in the previous·trials was relevant. It was the understanding the appellant's counsel that the instructions of the Court at the beginning of the argument were to preclude any reference to the former trials except where any contradiction could be shown. No contradiction had been established in the testimony of this or any other witness."

By reference to the record we find that following the ruling of the trial Judge, the said witness, in answering the above-stated question, stated in effect, that he had not been able to figure it out. We fail to see how the appellant was prejudiced by the trial Judge permitting this answer to be given. The exception is overruled.

Under Exceptions 8, 9, 10, and 11, the appellant imputes error to the trial Judge in his instructions to the jury, as follows: "(8) Charging incorrectly on proximate cause. (9) Charging incorrectly on concurrent cause. (10) Charg-

ing incorrectly on recovery for negligence not alleged in the complaint. (11) Charging that retention of the agent in employment may be considered as ratification of the 'acts complained of.' "

In his charge to the jury the trial Judge instructed the jury on all the principles of law applicable to the issues involved in the trial of the case, and in doing so followed the rules of force in this State. A study of the record convinces us that such charge was on the whole correct. In our opinion, it was certainly not prejudicial. These exceptions must be overruled.

Under the twelfth exception appellant, in effect, summarizes all of the preceding exceptions. Having already disposed of the preceding exceptions, it is not necessary to consider them further. The twelfth exception is therefore overruled.

In our opinion the appellant received a fair and impartial trial.

The exceptions are, therefore, overruled and the judgment of the lower Court affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.