14638

### STATE v. LONG

(195 S. E., 624)

June, 1937.

*Messrs. Wyche & Burgess,* for appellant,

*Mr. Robert T. Ashmore, Solicitor,* and *Mann & Mann,* for the State,

March 11, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The appellant, George W. Long, was convicted of involuntary manslaughter growing out of an automobile collision, and appeals to this Court upon several exceptions, from the judgment below.

On October 2, 1936, the appellant and a companion, E. K. Lewis, of Greenville, went to High Hampton, N. C., in the latter's car, on a business mission. After spending the day there, they left High Hampton late in the afternoon, and somewhere along the route on the way back to Greenville,

procured a quantity of corn whisky, in a fruit jar. They stopped at a filling station between the Town of Pickens and the Town of Easley, where they drank some of the liquor. The testimony for the defense tends to show that at that time the appellant was sober, and that he took only one drink at the filling station. Several persons who were present there testified that as far as they could judge, he had not drunk any whisky prior to reaching the filling station. The appellant and Mr. Lewis testified that the appellant had not drunk any whisky before stopping at the filling station. It appears, however, that Mr. Lewis had taken several drinks, and that when leaving this service station the appellant took the driver's seat and started toward Greenville, about dark. He drove the automobile through the Town of Easley, and to a point about three or four miles beyond Easley, where, at another filling station, he drove the car entirely off the pavement to his right, where he collided with and killed Lee Standridge, who was squatting at the rear wheel of his own car, at least eight feet from the pavement.

The appellant contended at the trial that as he approached Ellison's filling station he saw a car there, with headlights burning, facing in his direction, directly upon the pavement in his lane of travel, on his right-hand side of the highway. That he approached this point upon his proper side of the road, and that as he neared this car, which it later developed belonged to a Mr. Bowie, there was another car coming from the same direction, and that he thought both cars were in motion approaching him. To avoid a collision the appellant says that he drove his car to the right, off the pavement, over toward the filling station, where the deceased, Lee Standridge, was squatting, near the rear wheel of his automobile, and where he was struck and killed. Appellant's car passed between the Bowie car and the Standridge car, and in so doing struck and crushed the left fender of Bowie's car. The estimated distance between these two cars, according to the State's testimony, was about six feet. Appellant further says that when he struck Bowie's car he thought that both of the

cars referred to continued in motion, and that they passed on up the highway. The appellant did not stop to investigate or make any inquiry, but proceeded on down the highway toward Greenville.

Witnesses for the State testified that the Bowie car was parked on its left-hand side of the highway, two feet away from the pavement. The defense testimony placed it two feet on the pavement. The evidence of Mr. Perrin, a State highway engineer who was the first person to arrive upon the scene immediately after Standridge was killed, and who testified for the appellant, was to the effect that as he approached this filling station in his car, the lights of the Bowie car shone brightly in his face, and that this fact caused him to stop and drive his car off the highway into the filling station, in the same direction that the appellant had driven his car. That when he got out and learned that someone had been killed, he went over to Mr. Bowie's car and told the latter that if he did not move his car from the highway, it might result in the death of someone else.

The contention of the State was that the appellant was under the influence of intoxicating liquor, and that he was driving his car at a high and reckless rate of speed, proximately resulting in the death of Standridge. The contention of the appellant was that he was not under the influence of intoxicating liquor; that he was driving the car at a moderate and careful rate of speed, when he was suddenly confronted by an automobile on his side of the highway, and, in an effort to avoid a collision, drove his car off the pavement, and unavoidably struck the deceased.

The officers who arrested the appellant shortly after the accident testified that he was then under the influence of intoxicating liquor.

The issue of intoxication was in dispute, like all the other issues in the case. The Pickens County jailer and his wife stated that the appellant was not under the influence of liquor when he was brought to the jail soon after his arrest, about 10 o'clock that night.

The rate of speed at which the appellant was driving the automobile was one of the principal issues in dispute. The State did not offer any direct evidence to show that the appellant was driving at an excessive rate of speed at the time of the fatal accident, but attempted to prove this by the declaration of a witness sworn for the defense.

The appellant's first assignment of error is that the Court permitted the witness, Forest Looper, to contradict his son, Charles Looper, and testify that his son made a statement to him just before the accident relative to the speed of the appellant's car.

The appellant introduced as a witness in his behalf, Charles Looper. This witness, a young man of 19 years of age, and his father, Forest Looper, were standing on the highway just a short distance above the place of the accident, when the appellant's car passed them. In what must have been just a second or two thereafter, they heard the crash of the collision and the outcry which followed. Upon cross examination, Charles Looper was asked if he did not make the statement to his father as the car passed them, "That car is going awful fast," or "that car is speeding down the road." This question witness answered in the negative.

When Mr. Forest Looper was on the stand as a witness for the appellant, the solicitor sought to prove on cross examination by him that at the time and place specified, his son, Charles Looper, made the statement to him just quoted. The Court overruled the objection to the aforesaid testimony, and the witness testified that his son did make this statement.

When the objection was made in the lower Court, counsel for the appellant urged that this testimony was inadmissible, upon the grounds that it tended to contradict the witness upon a collateral matter, and that it was hearsay; that if admissible it could be used only to discredit the witness, and could not be treated as having any substantive, independent, or testimonial value.

Counsel for the State contended that it was admissible upon two grounds: First, that the testimony did not bear upon a collateral matter, but bore upon a direct point in the case, to wit, on how fast the automobile was going immediately before it hit the deceased; and, second, because the offered testimony was a spontaneous declaration or remark, drawn from the witness, Charles Looper, as the automobile passed him on the highway, and constituted a part of the *res gestae*.

■ Upon the first ground submitted by counsel for the State referred to above, we think the testimony offered was incompetent as substantive evidence tending to prove as a fact the speed of the automobile. For such purpose this evidence was wholly hearsay, and inadmissible. A substantive fact cannot be proved by a purely hearsay statement, under the guise of impeaching a witness. See Wigmore on Evidence, § 908, Subd. 8. *Bank of Parksville v. Dorn,* 126 S. C., 368, 120 S. E., 72.

However, we think this testimony was admissible, and an exception to the hearsay rule, upon the ground that it was a spontaneous declaration and constituted a part of the *res gestae*. It is an interesting illustration of the principle on which declarations are received as part of the *res gestae,* that declarations made by bystanders, when made spontaneously, in such a manner as to be a part of the transaction throwing light upon it, are admitted. Jones on Evidence, § 350; *Oliver v. Columbia, N. & L. R. Co.,* 65 S. C., 1, 43 S. E., 307; *Cobb v. Southern Public Utilities Co.,* 181 S. C., 310, 187 S. E., 363.

■ It is not necessary, to render a statement or act admissible as a part of the *res gestae,* that it should have been made or done by one of the participants in the main transaction, but if it has a necessary connection with the main fact, it may be admissible, no matter by whom it was made or done, provided, in the case of a declaration, that it relates to a matter or fact which the declarant might testify to if called as a witness, and provided, further, that

the declaration meets the other requirements of the rule. 22 C. J., § 540, and cases cited in note.

A declaration of a fact, which although antecedent in point of time, if it is preliminary or immediately preparatory to the main fact, may be received. *Hankinson v. Charleston & W. C. Ry.*, 94 S. C., 150, 77 S. E., 863.

Statements or circumstances which are explanatory of the main fact are admissible in evidence as a part of the *res gestae. Benbow v. Harvin*, 92 S. C., 180, 75 S. E., 414. Its explanatory nature is essential, for a substantial coincidence in point of time with the particular fact is not sufficient to render a declaration or accompanying fact admissible as a part of the *res gestae;* it must possess the very characteristic of being well calculated to unfold the nature and quality of the main fact, and so harmonize with it as to obviously constitute a single transaction. *Turpin v. Brannon*, 3 McCord, 261, 14 S. C. L., 261; *Hall v. James*, 3 McCord, 222, 14 S. C. L., 222. Of course, the utterance in question must be spontaneous, the test being, it has been said, whether the declaration was the facts talking through the party, or the party talking about the facts. *Murray v. Boston, etc., R.*, 72 N. H., 32, 54 A., 289, 61 L. R. A., 495, 101 Am. St. Rep., 660; *Funderburk v. Powell et al.*, 181 S. C., 412, 187 S. E., 742.

"The general rule is that the declarations must be substantially contemporaneous with the litigated transaction, and be the instinctive, spontaneous utterances of the mind while under the active, immediate influences of the transaction; the circumstances precluding the idea that the utterances are the result of reflection or designed to make false or self-serving declarations." *State v. McDaniel*, 68 S. C., 304, 310, 311, 47 S. E., 384, 386, 102 Am. St. Rep., 661; *Magill v. Southern Railway*, 95 S. C., 306, 78 S. E., 1033.

In our opinion, the facts in this case meet the rule. The fatal accident occurred immediately after this declaration, as to speed, was said to have been made

by the witness, Charles Looper; and in point of time and space was made practically simultaneously with the collision which resulted in the death of Standridge. It can fairly be said to be a part of the main transaction, and explanatory of it. The weight and credibility to be given this testimony were questions for the jury. In our opinion the declaration was spontaneous.

It was not incumbent upon the State to show that Standridge was not negligent, or that his death was not the result of an unavoidable accident. Since the statute of this State, Code Supp. 1936, § 1636, makes it a criminal offense for an intoxicated person to drive an automobile on the public highways, the presumption arises that one so doing is negligent. Whether the defendant in this case was operating an automobile upon the highway while intoxicated, which rendered him incapable of driving with that due care essential to the safety of other persons thereon, and whether the death of Standridge was a proximate result of this unlawful act. were issues for the jury under all the facts and circumstances; as was the issue as to the speed of the automobile, and the extent to which this might have contributed to the fatality.

It is gross and culpable negligence for a drunken person to attempt to guide and operate an automobile upon a public highway, and one so doing, and occasioning injuries to another, causing death, may be guilty of murder or manslaughter, as the facts may determine.

We agree with the Supreme Court of Michigan (*People v. Townsend*, 214 Mich., 267, 183 N. W., 177, 179, 16 A. L. R., 902), that the driving of an automobile upon the public highway by a person while intoxicated is not only *malum prohibitum*, but *malum in se*. In that case it is said: "It is true the statute forbids it and provides a penalty, but this in no way determines whether it is only *malum prohibitum*. The purpose of the statute is to prevent accidents and preserve persons from injury, and the reason for it is that an intoxicated person has so befud-

dled and deranged and obscured his faculties of perception, judgment, and recognition of obligation toward his fellows as to be a menace in guiding an instrumentality so speedy and high-powered as a modern automobile. Such a man is barred from the highway because he has committed the wrong of getting drunk and thereby has rendered himself unfit and unsafe to propel and guide a vehicle capable of the speed of an express train and requiring its operator to be in possession of his faculties."

The record shows that after the arguments in the case had been made to the jury by counsel, the trial Judge instructed the jury, as he entered upon his charge, to disregard the testimony of Forest Looper wherein he testified to the declaration made by his son, Charles Looper. He charged them that he was striking this testimony from the case, and that it was not to be considered by them in reaching a verdict.

The appellant, assuming this evidence to be incompetent, assigns error to the Court upon the ground that it was prejudicial to the defendant, entitling him to a new trial, because this evidence had been so impressed upon the minds of the jury by counsel for the State in argument, that the withdrawal and striking out of the testimony could not erase it from their minds.

Inasmuch as we have held that the testimony in question was competent, the striking out of the testimony could have resulted in no prejudice to the appellant.

Judgment affirmed.

MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS concur.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE CARTER did not participate on account of illness.