0127

Lloyd Winston BAIN, Executor of the Estate of Nannie S. Bain, Appellant, v. SELF MEMORIAL HOSPITAL, Respondent.

(314 S. E. (2d) 603)

Court of Appeals

*A. Camden Lewis,* of *Barnes & Austin,* Columbia, and *Robert C. Lake, Jr.,* Whitmire, *for appellant.*

*Robert M. Erwin, Jr.,* of *Burns, McDonald, Bradford, Erwin & Patrick,* Greenwood, *for respondent.*

March 12, 1984.

SANDERS, Chief Judge:

This is a wrongful death action by the executor of the estate of Nannie S. Bain, appellant, against Self Memorial Hospital, respondent. The trial judge excluded certain testimony offered by appellant as being hearsay and ordered nonsuit in favor of respondent. We reverse.

I

We first address the argument of the Hospital that this appeal should be dismissed for lack of appellate jurisdiction. The Hospital argues that an order for nonsuit is not a final determination of a case on its merits because it is not a bar to further litigation and, for this reason, is not appealable.

While this argument has apparently not been presented recently, our Supreme Court has in the past ruled that an order granting a nonsuit is appealable. *Bowen v. Johnston*, 87 S. C. 264, 69 S. E. 294 (1910); *Sims v. Southern Ry. Co.*, 66 S. C. 520, 45 S. E. 90 (1903); *The American Publishing and Engraving Co. v. Gibbes & Co.*, 59 S. C. 215, 37 S. E. 753 (1900). Since that time, appeals from orders granting nonsuits have been routinely heard and ruled upon. *See e.g. Associate Management, Inc. v. E. D. Sauls Construction Company*, 279 S. C. 219, 305 S. E. (2d) 236 (1983); *Fielding Home for Funerals v. Public Savings Life Insurance Company*, 271 S. C. 117, 245 S. E. (2d) 238 (1978); *Player v. Thompson*, 259 S. C. 600, 193 S. E. (2d) 531 (1972).

The trial judge here ordered nonsuit based on an insufficiency of evidence. Counsel represented to the court that no other evidence was available and appealed, contending the trial judge was in error as a matter of law. In addition, appeal is taken to the ruling of the trial judge excluding certain evidence, which if received, would be sufficient for the case to proceed past nonsuit.

Section 14-3-330 of the 1976 Code of Laws of South Carolina provides appellate jurisdiction for correction of errors of law and directs review on appeal of:

(2) An order affecting a substantial right made in an action when such order (a) in effect determines the action

and prevents a judgment from which an appeal might be taken or discontinues the action. . . .

Obviously, the nonsuit ordered in this case has the effect of both determining the wrongful death action of Mrs. Bain's executor and preventing a judgment, as well as discontinuing the action. For these reasons, we hold that the order of the trial judge granting nonsuit in favor of the Hospital is appealable.

## II

We next address the contention of Mrs. Bain's executor that the trial judge erred in failing to apply the doctrine of *res ipsa loquitur* in this case. Adoption of this doctrine was recently considered by our Supreme Court and rejected. *Legette v. Smith,* 265 S. C. 573, 220 S. E. (2d) 429 (1975). Counsel in that case applied for and obtained the right to argue against prior decisions refusing to adopt the doctrine. The court reconsidered its previous views and adhered to them.

Where the law has been recently addressed by our Supreme Court and is unmistakably clear, this court has no authority to change it. *Shea v. S. C. Department of Mental Health,* 310 S. E. (2d) 819 (1983). For this reason, we must decline adoption of the doctrine here.

## III

We now turn to the grounds of appeal relating to the facts of this case and the law applicable to these facts.

On November 5, 1977, Mrs. Bain entered the Hospital for the evaluation and treatment of an acute "inferior infarction." The Hospital undertook the duty to nurse, care for and attend to her during her stay and was charged with the duty of exercising reasonable care toward her. On November 6, 1977, Mrs. Bain was moved to a coronary care unit of the Hospital where she remained until her death on November 13, 1977. Mrs. Bain was an elderly lady. She was kept under sedation in the coronary care unit where her mental and physical condition was observed as being groggy, drowsy, confused, lethargic, almost stuperous, restless, disoriented, hostile and agitated. On numerous occasions, she tried to crawl or climb out of her bed.

All of the foregoing facts are alleged by the complaint of Mrs. Bain's executor and admitted by the Hospital in its

answer. In addition to these facts, certain hospital records relating to Mrs. Bain were admitted into evidence without objection as joint exhibits of both parties.

These records confirm Mrs. Bain's mental and physical condition as alleged generally by the pleadings for the period November 7-12, 1977. The records also reflect she engaged in inappropriate conversation, called out and sometimes refused medication. Significantly, the records for every day but one, record that she tried to get out of bed or "crawl" or "climb" out of bed and, at one point, was "dangling over the side."

The records for November 13, 1977, the last day of her life, note Mrs. Bain was very confused, calling out, yelling and screaming, and again tried to crawl out of bed.

Beginning with the notation appearing for November 13, 1977, at 9:05 p.m., the following is a direct quotation from these records:

> 9:05 Assisted up into bed — Resp. became rapid, then slowed & eyes rolled back — pupils dilated — CPR began — Dr. Mobley here — Atropine 1 mg IV p rate — (illegible) — H.R. — p Atropine but no effective beats — No resp. of own — CPR d/c per order Dr. Mobley — Pt. pronounced expired by Dr. Mobley. Dr. Allred notified —

> 9:25: Dr. Allred here & husband called.
> 10:00 p.m.: Body & personal effects to morgue.
> (Symbols omitted.)

In addition to notations by nurses and other hospital personnel, the records contain entries in the name of one "Allred." (The record otherwise reveals that Dr. David P. Allred was one of Mrs. Bain's physicians while she was in the Hospital.) The following is a direct quotation of this part of the record for November 13, 1977:

> Confused during day & suddenly more agitated & sat up & crawled out of bed but suddenly collapsed (illegible) pulses & CPR unsuccessful. Rupture most likely related to infarct (illegible) steroids. Dr. Mobley assisted.

Mrs. Bain's executor also offered a pretrial deposition of Mrs. Bain's husband who had himself died prior to trial. The following is a direct quotation of the pertinent part of Mr. Bain's testimony taken from this deposition in which he

relates the contents of the telephone call he testified that he received from Dr. Allred on November 13, 1977, at approximately 9:30 p.m.:

> Q. What if anything did Dr. Allred say to you concerning your wife?
> A. Well, when he started talking to me, he told me he was sorry to have to inform me that my wife had just passed away and it kind of shocked me a little bit but I asked him, I said, "She was getting along so good today." I said, "What happened?" I said, "She was getting along real good." He said, "Well Mr. Bain, you know she had something wrong with her heart, you know she was a little confused." I said, "Yeah, but what happened?" He said, "She crawled out of the bed, Mr. Bain and the jolt from the fall bursted her heart."

The Hospital objected to this testimony of Mr. Bain. The trial judge excluded it as hearsay and granted nonsuit in favor of the Hospital.

### A

Mrs. Bain's executor argues first that the hospital records alone contain sufficient circumstantial evidence from which the jury could have inferred the Hospital was negligent, and the case should have been submitted to the jury. He cites in support of his position, the cases of *Howell v. Hairston*, 261 S. C. 292, 199 S. E. (2d) 766 (1973) and *Childers v. Gas Lines, Inc.*, 248 S. C. 316, 149 S. E. (2d) 761 (1966). *Howell* stands for the proposition that negligence can be proved by circumstantial evidence. *Childers* holds that:

> "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident rose from a want of care." *Id.* at 323-324, 149 S. E. (2d) at 764.

In our view, this evidence is sufficient for the jury to have inferred that the Hospital was negligent. Mrs. Bain was an elderly and extremely ill woman. The Hospital admits that it

undertook the duty to take care of her and exercise reasonable care in doing so. She was not able to think rationally and over the course of five days tried to get out of bed or "crawl" or "climb" out of bed on numerous occasions. On one occasion, she was observed dangling over the side of the bed. On the sixth day, she was allowed to get out of the bed somehow and had to be "assisted back up into bed," whereupon she immediately died. (While the hospital record of November 13 does not specifically say that Mrs. Bain was out of the bed, this can be inferred from the notation "assisted back *up* into bed.")

In ruling on a motion for involuntary nonsuit, the evidence must be viewed in the light most favorable to the party resisting the motion. If more than one inference can be drawn from the evidence, the motion must be denied. *Associates Management.*

However, even though inferences of negligence by the Hospital may be drawn from the hospital records, there is nothing contained in this evidence from which it can be inferred, circumstantially or otherwise, that the negligence of the Hospital resulted in Mrs. Bain's death. In other words, the hospital records, standing alone, are devoid of even an inference that the event of Mrs. Bain's being out of the bed was the proximate cause of her dying. There is no evidence in these records that this was the "thing which caused injury" as required by *Childers.* Negligence is not actionable unless it is the proximate cause of any injury. *Hughes v. Children's Clinic, P.A.*, 269 S. C. 389, 237 S. E. (2d) 753 (1977). Mrs. Bain's executor presented no other evidence on this point and called no witness other than the testimony of Mr. Bain which was excluded by the trial judge as hearsay.

B

We must therefore address the further contention of Mrs. Bain's executor that the trial judge was in error in excluding the deposition testimony of Mr. Bain recounting what Dr. Allred told him concerning the cause of his wife's death. The Hospital concedes that if Dr. Allred's statement is admissible, the trial judge erred in ordering nonsuit.

The trial judge excluded this testimony as violative of the rule against hearsay. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. *Player.*

The reason for the rule excluding hearsay is that out-of-court statements are not subject to the same tests of truth as statements made from the witness stand. The out-of-court statement is not made under oath or subject to cross examination in the presence of the Court. There is therefore no opportunity for the court to observe the declarant as he speaks or to investigate either his character or motives. A further reason sometimes given is the misconstruction to which hearsay may be exposed, due to the ignorance, inattention or bad motives of the hearers. All of these reasons are succinctly set out in *Jones v. Charleston & W. C. Ry. Co.*, 144 S. C. 212, 142 S. E. 516 (1928).

However, it is at the same time recognized that an absolute prohibition against hearsay would make the truth searching process of trial impossible. Thus, no doubt since the origin of the rule itself, many exceptions to the hearsay rule have been recognized. In spite of this, or perhaps because of it, the law governing hearsay is a conglomeration of inconsistencies developed out of conflicting theories.

Both what Mr. Bain said in his deposition *and* what he said Dr. Allred said to him are undeniably hearsay. Both are statements (1) made out of court and (2) offered to prove the truth of the matter asserted. In addition to the "double hearsay" problem thus presented, the Hospital argues a further or "triple" hearsay exists. There do not appear to be any South Carolina cases on the question of hearsay within hearsay. W. Reiser, *A Comparison of the Federal Rules of Evidence with South Carolina Evidence Law*, 50 (2nd ed. 1983). However, the general rule is that hearsay included within hearsay is not excluded if each part of the combined statements falls within some exception. *See e.g.* Rule 805, Federal Rules of Evidence. We will deal with each hearsay statement separately and then address two further arguments by the Hospital for exclusion.

1.

The statement of Mr. Bain, although hearsay, is clearly admissible under a well recognized exception to the hearsay rule, allowing for admission into evidence of previous testimony on a controlling issue if subject to cross-examination and the witness is unavailable at trial. *Cf. Gaines v. Thomas*, 241 S. C. 412, 128 S. E. (2d) 692 (1962) (testimony allowed from previous trial where witness de-

ceased). *See also* Circuit Court Rule 87(D)(3). This statement of Mr. Bain is contained in his pretrial deposition where the Hospital had the opportunity for cross-examination. Mr. Bain died prior to trial and was thus unavailable.

## 2.

The statement of Dr. Allred as recounted by Mr. Bain presents a more difficult question. Unlike the statement of Mr. Bain, it was neither made under oath, nor did the Hospital have an opportunity to cross-examine. In our opinion, the statement of Dr. Allred is none the less also admissible under another exception to the rule. This exception is called by our Supreme Court the *res gestae* exception.

No hard and fast rule can be laid down as to the admissibility of evidence pursuant to the *res gestae* exception, but each case must be decided on its own facts. *Marks v. I. M. Pearlstine & Sons*, 203 S. C. 318, 26 S. E. (2d) 835 (1943). According to a recent decision of our Supreme Court, in order to qualify for admission under the exception to the rule which our Court calls *res gestae*, a statement must be "substantially contemporaneous with the litigated transaction, and be the instinctive, spontaneous utterances of the mind while under the active, immediate influences of the transaction; the circumstances precluding the idea that the utterances are the result of reflection or designed to make false or self-serving declaration[s]." *Addyman v. Specialties of Greenville, Inc.*, 273 S. C. 342 at 344-345, 257 S. E. (2d) 149 at 150 (1980).

In *Lazar v. Great Atlantic & Pacific Tea Co.*, 197 S. C. 74 at 83, 14 S. E. (2d) 560 at 563 (1941), the court explained what is meant by the requirement that a statement be made "contemporaneous" with the litigated transaction:

> To make declarations a part of the *res gestae*, they must be contemporaneous with the main fact — not, however, precisely concurrent in point of time. If they spring out of the transaction, elucidate it, and are made at a time so near to it as reasonably to preclude the idea of deliberate design, they are then regarded as contemporaneous.

It is well-known that the safeguards of credibility present when testimony is given in court, as set out in *Jones*, are by no means perfect. People lie and deceive others even when testi-

fying in court. Thus, the rationale of the *res gestae* exception is that the circumstances surrounding an out-of-court statement, as set out in *Addyman*, can provide safeguards sufficiently equivalent to those which would be present in court. In other words, *Addyman* recognizes that when an out-of-court statement is made in certain circumstances, it is as likely to be true as if it were made in court.

In our opinion, the circumstances in which Dr. Allred spoke, when analyzed rationally, satisfy the criteria for application of the *res gestae* exception as provided by *Addyman*.

The records describing the circumstances surrounding Mrs. Bain's death begin with the notation at 9:05 p.m., when she was "assisted up into bed" and end with the notation of 10 p.m. when her body was removed to the morgue. The pronouncement of her death is the last entry under the 9:05 p.m. notation. Dr. Allred's call to Mr. Bain is noted at 9:25 p.m. This is consistent with the testimony of Mr. Bain as to the time Dr. Allred spoke to him.

The 9:25 p.m. notation of Dr. Allred's call to Mr. Bain is also the notation that records Dr. Allred's presence at the hospital. Thus, it appears that Dr. Allred's statement was made just after he arrived on the scene, within 20 minutes, at the latest, after Mrs. Bain's death and in the midst of the circumstances surrounding it. From these facts it can be fairly concluded that Dr. Allred's statement came at a time substantially contemporaneous with the event of Mrs. Bain's death and was made spontaneously and instinctively while he was under the immediate influence of this event. Indeed, it would be difficult to imagine an event more likely by its very nature to influence someone and produce a spontaneous and instinctive response than arriving at the scene of a person's death and then immediately having to explain to that person's spouse how the death occurred. This would be particularly true in the case of a physician charged with the responsibility of attending to the well-being of the person who died.

Furthermore, the circumstances here and the time frame within which the statement was made reasonably preclude deliberate design to make a false or self-serving statement. (The statement does not appear in any way self-serving.) Finally, it is clear that the statement sprang out of and elucidated Mrs. Bain's death as required by *Lazar*.

The Hospital argues that the statement of Dr. Allred was too remote in time from Mrs. Bain's death to have been spontaneous and cites *Marshall v. Thomason*, 241 S. C. 84, 127 S. E. (2d) 177 (1962) in support of its position. In *Marshall*, the court excluded a statement by a truck driver made to a highway patrolman at an accident scene some 30 minutes after the accident had occurred. We find this case materially different on its facts from the instant case. *Marshall* involved a relatively routine traffic accident. The verdict returned for the plaintiff was $6,750 of which only $1,750 was for actual damages. The plaintiff proved $1,600 in damages to his car. The court specifically found "no circumstances were proved from which spontaneity could be inferred." The statement in question was "intended to exonerate the declarant." In sharp contrast, the instant case involves a statement made in circumstances which can be expected to produce spontaneity. Furthermore, the statement of Dr. Allred was not self-serving.

Time is but one factor to be considered in deciding whether to apply the *res gestae* exception. Surely, courts having rejected the technology of the polygraph as determinant of credibility cannot logically substitute that of the stopwatch. Spontaneity refers to the state of mind of the person making a statement. Obviously, the more serious the circumstances, the longer the state can be expected to last. *See* 6 Wigmore, *Evidence* § 1750 (Chadbourn rev. 1976), E. Cleary, *McCormick on Evidence* § 297 (2nd ed. 1972). In the South Carolina case of *State v. Quillien*, 263 S. C. 87, 207 S. E. (2d) 814 (1974), our Supreme Court affirmed the admission of a statement by a rape victim to a policeman after he had waited on her to arrive at a hospital for some *undetermined* period of time.

For these reasons, we reject the argument of the Hospital on this point.

### 3.

Having disposed of the first two hearsay problems presented, we turn to the argument of the Hospital that a third aspect of hearsay is involved. Here the Hospital argues that since Dr. Allred was not present when Mrs. Bain was pronounced dead, his knowledge of her death

must necessarily have come from another person and thus his alleged statement itself had to have been founded on hearsay. We cannot agree based on the record before us. Dr. Allred was Mrs. Bain's physician while she was in the hospital and had the opportunity to be familiar with her condition prior to her death. While he was apparently not with Mrs. Bain at the precise moment she was "pronounced expired," it appears from the hospital records that he was present within 20 minutes thereafter. His call to Mr. Bain was noted as having been made at 9:25 p.m., well before her body was removed from the hospital at 10 p.m. Dr. Allred therefore had every opportunity to examine her body and do whatever else was necessary to determine the cause of her death.

A careful analysis of Dr. Allred's statement to Mr. Bain reveals that he actually said two things (1) that Mrs. Bain crawled out of bed and (2) that the shock of doing so caused her death.

The first part of his statement is no more than a restatement of what is already in evidence from the hospital records which were offered by both parties and admitted without objection. Obviously, Dr. Allred had this information available to him upon his arrival at the hospital. The second part of his statement was information determinable by him based on his own observation.

### 4.

The Hospital argues next that Dr. Allred's statement is one of opinion, not fact, and for this reason is not admissible under the *res gestae* exception, citing *Bagwell v. McLellan Stores Co.*, 216 S. C. 207, 57 S. E. (2d) 257 (1949). We find this case readily distinguishable on its facts. *Bagwell* was a slip and fall case in which negligence was alleged against a store for having an excessively slick and uneven floor. The trial court allowed testimony of an alleged statement by an unknown person, five seconds after the accident, to the effect that the floors of the store had "just been oiled and she fell." On appeal, the Supreme Court reversed holding:

> It must be conceded that the statement in question was sufficiently near in point of time and place to come within

the *res gestae* rule, but another essential requirement is that "it must possess the very characteristic of being well calculated to unfold the nature and quality of the main fact, and so harmonize with it as to obviously constitute a single transaction." *State v. Long,* 186 S. C. 439, 195 S. E. 624. The declaration must explain, elucidate or in some way characterize that event. *Lazar v. Great Atlantic & Pacific Tea Co. et al.,* 197 S. C. 74, 14 S. E. (2d) 560; *Marks v. Pearlstine & Sons,* 203 S. C. 318, 26 S. E. (2d) 835. The purpose of permitting the introduction of this class of evidence is to prove facts not opinions.

If the declarant intended to state that the floor had been recently oiled, she was merely narrating an antecedent occurrence. If she intended to describe the appearance of the floor, her statement did not elucidate or characterize the main event but merely represents a conclusion on her part from what she observed either before or after the accident. It might also be noted that there is no testimony showing that this declarant saw the accident. *Id.* at 217-218, 57 S. E. (2d) at 262.

In the instant case, the declarant is obviously not an unidentified person whose source of information is unknown. Instead, he is one of the physicians attending Mrs. Bain in the hospital. As previously discussed, the basis of his statement is also apparent from the record. Furthermore, his statement was made in specific reference to the event here in issue, Mrs. Bain's death and its cause. It was "calculated to unfold the nature and quality of the main fact, and so harmonize with it as to obviously constitute a single transaction." His statement also explains, elucidates and characterizes the event of Mrs. Bain's death.

Our conclusion is also supported by other cases. *Marks v. I. M. Pearlstine & Sons,* previously cited, was a wrongful death action in which a woman was run over by a truck alleged to have been racing with another truck. Pursuant to the *res gestae* exception, the trial court allowed testimony of an alleged statement of a bystander made just prior to the accident: "Golly, look there; those trucks are going to kill somebody yet." The declarant did not see the accident and was some distance from its scene when he made the alleged statement. On appeal, the Supreme Court affirmed, holding:

... the racing of the drivers and the negligent operation of the trucks just before plaintiff's intestate was struck and killed were important factors well calculated to unfold the nature and quality of the main fact and so to harmonize with it as to obviously constitute a single transaction. *Id.* at 327, 26 S. E. (2d) at 838.

In *Van Boven v. F. W. Woolworth Company*, 239 S. C. 519, 123 S. E. (2d) 862 (1962), a slip and fall case decided after *Bagwell*, the Supreme Court held admissible, pursuant to the *res gestae* exception, an alleged statement of a salesgirl made to her supervisor shortly after the fall: "This is the lady that fell outside in the flower bed where they had been working." The court held this alleged statement was "explanatory and tended to unfold the nature and quality of the main or primary fact in showing the reason for [the] fall." The court cited with approval in reaching this result the earlier case of *State v. Long*, 186 S. C. 439, 195 S. E. 624 (1938). In that case the trial court allowed testimony of a statement made prior to an accident: "That car is going awful fast, or that car is speeding down the road."

The holdings of *Marks, Van Boven* and *Long* on this point appear indistinguishable from the instant case. *Bagwell*, on the other hand, is clearly distinguishable on its facts, as previously discussed.

5.

Finally we come to the argument of the Hospital that ■ the decision of the trial judge not to admit the statement of Dr. Allred was a matter within his discretion and should not be disturbed on appeal. In support of its argument the Hospital cites *Marshall*:

The ruling of the trial judge (on evidence offered pursuant to the *res gestae* exception) will not be disturbed unless it clearly appears from undisputed circumstances in evidence that the testimony ought to have been admitted or rejected, as the case may be.

We reject the argument of the Hospital on this point for two reasons.

First, the circumstances in which this statement was allegedly made are not disputed. Instead, they are apparent

from the hospital records offered into evidence by both sides and admitted without objection. The alleged statement should have been admitted under these circumstances pursuant to the *res gestae* exception for the reasons previously discussed.

Secondly, it is apparent from the record that the trial judge here excluded the statement based on his view of the application of the law governing hearsay. He did not make a discretionary ruling as to its reliability otherwise. The reason for allowing discretion by the trial judge in applying the *res gestae* exception is because "he is in a position to see and hear the witnesses testify and be able to get a clear understanding of the transaction as it occurred. . . ." *Neal v. Southern Ry., Carolina Division*, 162 S. C. 288, 160 S. E. 837 (1930). The record in the instant case consists only of the pleadings, the deposition testimony of Mr. Bain and the hospital records to which we have previously referred. No witness testified in person before the trial judge. Obviously, he had no better opportunity than this court to appraise the witness and clearly understand the events as they occurred.

## IV

In conclusion, we find persuasive the reasoning in the cases of *United States v. 25,406 Acres of Land*, 172 F. (2d) 990 at 995 (4th Cir. 1949) and *Dallas County v. Commercial Union Assurance Company*, 286 F. (2d) 388 at 392 n. 3 (1961). Both cases affirmed the admission of evidence which was undeniably hearsay.

In the first case, Judge Parker observed:

> In cases of this sort, we must never forget that the common sense of the twelve men on the jury is a surer guaranty of justice than any attempt that might be made to give logical application to antiquated rules of evidence. If an honest and intelligent jury is given all the facts and is correctly instructed as to the law, it will come pretty near deciding a case correctly. Artificial rules of evidence which exclude from the consideration of the jurors matters which men consider in their everyday affairs hinder rather than help them at arriving at a just result.

In *Dallas County,* Judge Wisdom quoted with approval the observation of Judge Parker and said further:

> The courts by multiplying exceptions reveal their conviction that relevant hearsay evidence normally has real probative value, and is capable of valuation by a jury as well as by other triers of fact.

Obviously, our holding here is not intended to require the testimony by Mr. Bain of Dr. Allred's statement to be accepted as true. Neither is it the function of this court to pass upon the weight which should be accorded such testimony. It is instead our opinion that the jury should be allowed to consider such testimony in reaching its verdict. Reasonable and prudent people rely every day on hearsay in making important decisions in their lives. Such people might well find reliable a statement by a doctor telling a man how his wife died, just minutes after her death. If such people would, why shouldn't a jury be allowed to do so?[1]

For these reasons the order of the trial judge granting nonsuit is reversed and the case remanded for trial.

Reversed and remanded.

BELL and GOOLSBY, JJ., concur.

---

[1] Professor Younger, in his commentary on the rule against hearsay, characterized the words of Judge Wisdom in *Dallas County* as containing a caveat to the law professors of America. Younger, *An Irrelevant Introduction to Hearsay,* 3 A.B.A. Litigation Monograph Series 36 (1977). We make a similar caveat here: Please do not craft from our decision yet another exception to the rule against hearsay (*e.g.* The "doctor explaining to man how his wife died" exception) lest the exceptions to this already complex rule become literally innumerable. Instead, simply read this opinion as being a common sense application of the rationale on which the *res gestae* exception is based, as long recognized in South Carolina.